**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as Liquidating
Agent of Southwest Corporate Federal Credit
Union and Members United Corporate Federal
Credit Union,

13 Civ. 6705

**ECF Case**

**Electronically Filed**

*Plaintiff*,

v.

MORGAN STANLEY & CO., INC. and
MORGAN STANLEY CAPITAL I INC.,

*Defendants*.

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES**

DAVIS POLK & WARDWELL LLP
James P. Rouhandeh
Paul S. Mishkin
Daniel J. Schwartz
Jane M. Morril
Scott Wilcox

450 Lexington Avenue
New York, New York  10017
(212) 450-4000

*Attorneys for Defendants Morgan Stanley &
Co., Inc., n/k/a Morgan Stanley & Co. LLC,
and Morgan Stanley Capital I Inc.*

## TABLE OF CONTENTS

P<span>AGE</span>

PRELIMINARY STATEMENT ...................................................................................................1

STANDARD OF REVIEW .........................................................................................................2

ARGUMENT .............................................................................................................................3

    I.    NCUA Cannot Satisfy the Exacting Standards for a Motion to Strike...................3

        A.    NCUA Has Not Shown that Morgan Stanley's Causation Defenses
            Should Be Stricken ................................................................................3

            1.    NCUA Must Prove Loss Causation to Establish Its
                Securities Claim Under Illinois Law.................................................4

            2.    NCUA Must Prove Transaction Causation to Establish a
                Claim Under Texas' and Illinois' Blue Sky Laws .........................8

            3.    NCUA Has Not Shown that It Would Suffer Any Prejudice
                as a Result of Morgan Stanley's Inclusion of Causation-
                Based Defenses in Its Answer.........................................................9

        B.    NCUA Has Not Shown that Morgan Stanley's Equitable Defenses
            Should Be Stricken ..............................................................................10

        C.    NCUA's Attempt to Strike Certain of Morgan Stanley's Defenses
            Pursuant to *Twombly* and *Shechter* Must Fail.........................................12

            1.    *Twombly* and *Shechter* Did Not *Sub Silentio* Overrule the
                Established Standard for Deciding Motions to Strike
                Affirmative Defenses ......................................................................12

            2.    NCUA Has Not Satisfied the Other Elements of Its Motion
                to Strike with Respect to the Defenses It Challenges Under
                *Twombly* and *Shechter* ................................................................15

    CONCLUSION............................................................................................................18

# TABLE OF AUTHORITIES

## CASES

PAGE

*Aegis Ins. Holding Co., v. Gaiser*,
No. 04-05-00938-CV, 2007 WL 906328 (Tex. App. Mar. 28, 2007). .................................... 10

*Ali v. N.Y. City Transit Auth.*,
176 F.R.D. 68 (E.D.N.Y. 1997) ................................................................................................. 2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................ 13

*Bartfield v. Murphy*,
578 F. Supp. 2d 638 (S.D.N.Y. 2008) ..................................................................................... 17

*Bayer CropScience AG v. Dow AgroSciences LLC*,
No. 10 Civ. 1045 RMB/JS, 2011 WL 6934557 (D. Del. Dec. 30, 2011) ............................... 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. 12, 13, 15

*Berdeguez v. United Bhd. of Carpenters & Joiners of Am.*,
No. 93 Civ. 0552 (LBS), 1996 WL 551722 (S.D.N.Y. Sept. 26, 1996) ................................. 15

*Birnbaum v. Newport Steel Corp.*,
193 F.2d 461 (2d Cir. 1952) ..................................................................................................... 4

*Branch-Hess Vending Servs. Emps.' Pension Trust v. Guebert*,
751 F. Supp. 1333 (C.D. Ill. 1990) .......................................................................................... 5

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005) ..................................................................................................... 2

*Calpetco 1981 v. Marshall Exploration, Inc.*,
989 F.2d 1408 (5th Cir. 1993) ................................................................................................. 8

*Calzaturificio Rangoni, S.A. v. U.S. Shoe Corp.*,
No. 92 Civ. 2020 (JFK), 1993 WL 485753 (S.D.N.Y. Nov. 23, 1993) .................................. 11

*Casstevens v. Smith*,
269 S.W.3d 222 (Tex. App. 2008) .......................................................................................... 11

*Chevron Corp. v. Donziger*,
886 F. Supp. 2d 235 (S.D.N.Y. 2012) ............................................................................... 13, 18

*Clara Wonjung Lee, DDS, Ltd. v. Rosalina R. Robles DMD, Ltd.*,
No. 1-12-2872, 2014 IL App (1st) 122872-U (Ill. App. Ct. Mar. 11, 2014) ............................ 7

*Cnty. Vanlines Inc. v. Experian Info. Solutions, Inc.*,
205 F.R.D. 148 (S.D.N.Y. 2002) ....................................................................... 2, 3, 9, 12

*DiModica v. U.S. Dep't of Justice*,
No. 05 Civ. 2165 (GEL), 2006 WL 89947 (S.D.N.Y. Jan. 11, 2006) ............................... 15, 16

*EEOC v. Kelley Drye & Warren, LLP*,
No. 10 Civ. 655 (LTS), 2011 WL 3163443 (S.D.N.Y. July 25, 2011) ................................... 15

*Elipas v. Jedynak*,
No. 07 C 3026, 2011 WL 1706059 (N.D. Ill. May 5, 2011) ..................................................... 7

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) .............................................................................................................. 5

*Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*,
Nos. 11 Civ. 6189 (DLC) et al., 2013 WL 6588249 (S.D.N.Y. Dec. 16, 2013) ....................... 6

*Finkel v. Stratton Corp.*,
962 F.2d 169 (2d Cir. 1992) ................................................................................................. 5

*Fischman v. Raytheon Mfg. Co.*,
188 F.2d 783 (2d Cir. 1951) ................................................................................................. 5

*Heil v. Lebow*,
No. 91 Civ. 8656 (JFK), 1994 WL 637686 (S.D.N.Y. Nov. 14, 1994) ............................... 5, 6

*Hidell v. Int'l Diversified Invs.*,
520 F.2d 529 (7th Cir. 1975) ............................................................................................ 5, 6

*Hon Hai Precision Indus. Co. v. Wi-LAN, Inc.*,
No. 12 Civ. 7900 (SAS), 2013 WL 2322675 (S.D.N.Y. May 28, 2013) ............................ 12, 13

*In re Lehman Bros. Holdings Inc.*,
474 B.R. 441 (Bankr. S.D.N.Y. 2012) ................................................................................... 2

*In re Mass. Mut. Life Ins. Co.*,
Nos. 11-CV-30035-MAP et al., 2012 WL 5077642 (D. Mass. Oct. 17, 2012) ....................... 8

*Ins. Co. of N. Am. v. Morris*,
928 S.W.2d 133 (Tex. App. 1996) ....................................................................................... 11

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*,
   962 S.W.2d 507 (Tex. 1998) .................................................................. 11

*JSMS Rural LP v. GMG Capital Partners III, LP*,
   04 Civ. 8591 (SAS), 2006 WL 1867482 (S.D.N.Y. July 6, 2006) ........................... 7

*Keystone Global LLC v. Decore Essentials Ltd.*,
   12 Civ. 9077 (DLC), 2014 WL 888336 (S.D.N.Y. Mar. 6, 2014) ........................ 1, 2, 8, 11, 13

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
   No. 12-873, 572 U.S. __, 2014 WL 1168967 (Mar. 25, 2014) .............................. 5

*Lucas v. Downtown Greenville Invs. Ltd. P'ship*,
   671 N.E.2d 389 (Ill. Ct. App. 1996) ...................................................... 7

*Maryville Acad. v. Loeb Rhoades & Co.*,
   530 F. Supp. 1061, 1066 (N.D. Ill. 1981) ............................................... 4, 6

*Mott v. Tri-Cont'l Fin. Corp.*,
   330 F.2d 468 (2d Cir. 1964) .............................................................. 7

*Movitz v. First Nat'l Bank of Chicago*,
   148 F.3d 760 (7th Cir. 1998) ............................................................. 8

*Nolfi v. Ohio Ky. Oil Corp.*,
   675 F.3d 538 (6th Cir. 2012) ............................................................. 7

*Ohrt v. Union Gas Corp.*,
   398 S.W.3d 315 (Tex. App. 2012) ........................................................ 11

*Osborne v. Mallory*,
   86 F. Supp. 869 (S.D.N.Y. 1949) ........................................................ 5

*Owen v. Jim Allee Imps., Inc.*,
   380 S.W.3d 276 (Tex. App. 2012) ........................................................ 11

*Pitman v. Lightfoot*,
   937 S.W.2d 496 (Tex. Ct. App. 1996) .................................................... 8

*Platinum Partners Value Arbitrage Fund, Ltd. P'ship v. Chicago Bd. Options Exch.*,
   976 N.E.2d 415 (Ill. App. Ct. 2012), *appeal denied*, 981 N.E.2d 1003 (Ill. 2012) ........ 4, 5, 6, 7

*Regents Ins. Co. v. Storm King Contracting, Inc.*,
   No. 06 Civ. 2879 (LBS), 2008 WL 563465 (S.D.N.Y. Feb. 27, 2008) ...................... 9

*Roh v. DeVack*, No. 3:07-CV-1901 (CSH),
  2010 WL 5069874 (D. Conn. 2010) .................................................................. 16

*Rousseff v. E.F. Hutton Co.*,
  843 F.2d 1326 (11th Cir. 1988) ......................................................................... 7

*RSM Prod. Corp. v. Fridman*,
  643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).......................... 2

*Saudi Pearl Ins. Co. v. M.V. Aditya Khanti*,
  No. 95 Civ. 2174 (JFK), 1997 WL 291834 (S.D.N.Y. June 2, 1997) ................................ 2, 15

*Schenck v. Ebby Halliday Real Estate, Inc.*,
  803 S.W.2d 361 (Tex. App. 1990) ..................................................................... 11

*Scott v. WorldStarHipHop, Inc.*,
  No. 10 Civ. 9538 (PKC), 2012 WL 5835232 (S.D.N.Y. Nov. 14, 2012)....................... 14, 15

*Shechter v. Comptroller of City of N.Y.*,
  79 F.3d 265 (2d Cir. 1996).......................................................... 12, 13, 14, 15

*Sherman v. A.J. Pegno Constr. Corp.*,
  528 F. Supp. 2d 320 (S.D.N.Y. 2007)................................................................ 17

*Strategic Diversity, Inc. v. Alchemix Corp.*,
  666 F.3d 1197 (9th Cir. 2012) .......................................................................... 7

*Tex. Capital Sec., Inc. v. Sandefer*,
  58 S.W.3d 760 (Tex. App. 2001)...................................................................... 10

*Thiele v. Shields*,
  131 F. Supp. 416 (S.D.N.Y. 1955)..................................................................... 5

*Tirapelli v. Advanced Equities, Inc.*,
  813 N.E.2d 1138 (Ill. App. Ct. 2004) ......................................................... 4, 5, 6

*Todd v. Societe Bic, S.A.*,
  21 F.3d 1402 (7th Cir. 1994) ............................................................................ 8

*Valentini v. Citigroup, Inc.*,
  No. 11 Civ. 1355 (JMF), 2013 WL 4407065 (S.D.N.Y. Aug. 16, 2013) ......................... 16

*Wireless Ink Corp. v. Facebook, Inc.*,
  787 F. Supp. 2d 298 (S.D.N.Y. 2011)........................................................... 2, 14

*William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*,
  744 F.2d 935 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986)......... 2, 3, 7, 13

*Wyeth v. King Pharm., Inc.*,
  396 F. Supp. 2d 280 (E.D.N.Y. 2005) ................................................................. 2

### STATUTES & RULES

Fed. R. Civ. P. 8(a)(2)................................................................................... 13

Fed. R. Civ. P. 8(c). .................................................................................. 13, 15

Fed. R. Civ. P. 10(c) ..................................................................................... 17

Fed. R. Civ. P. 12(c) ..................................................................................... 14

Fed. R. Civ. P. 12(f)................................................................................... 14, 15

SEC Rule 10b-5 ..................................................................................... 1, 4, 5, 7

Section 12 of the Illinois Securities Law ...................................................... 1, 4, 5, 6

Sections 12(F) of the Illinois Securities Law.................................................... 4, 5, 7

Sections 12(G) of the Illinois Securities Law ................................................ 4, 5, 7, 8

Sections 12(I) of the Illinois Securities Law...................................................... 4, 5

Section 10(b) of the Securities Exchange Act of 1934 ........................................... 5, 7

Section 17(a) of the Securities Act of 1933 ............................................... 1, 4, 5, 6, 8

Tex. Rev. Civ. Stat. Ann. art. 581, § 33(H)(3)(a) ................................................ 12

### OTHER AUTHORITIES

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1381……..………2

Defendants Morgan Stanley & Co., Inc. and Morgan Stanley Capital I Inc. (collectively, "Morgan Stanley") respectfully submit this memorandum of law in opposition to the Motion to Strike Certain Affirmative Defenses filed by Plaintiff National Credit Union Administration Board ("NCUA") as liquidating agent of Southwest Corporate Federal Credit Union and Members United Corporate Federal Credit Union (together, the "Credit Unions").

## PRELIMINARY STATEMENT

NCUA moves this Court to apply the extraordinary remedy of striking defenses asserted in Morgan Stanley's answer.  Both the Second Circuit and this Court have recognized that such motions are disfavored,  rarely granted, and "never" an appropriate vehicle "for the determination of disputed and substantial questions of law."  *Keystone Global LLC v. Decor Essentials Ltd.*, 12 Civ. 9077 (DLC), 2014 WL 888336, at *2 (S.D.N.Y. Mar. 6, 2014) (Cote, J.).

The defenses that NCUA asks this Court to strike are either plainly cognizable under either Illinois or Texas law (or both), or – at a minimum – present significant and disputed legal questions that are inappropriate for resolution before the completion of discovery.  With respect to loss causation, several courts – including the Appellate Court of Illinois – have found that loss causation is a required element of NCUA's claim under Section 12 of the Illinois Securities Law, just as it is a required element of Section 17(a) of the Securities Act of 1933 and SEC Rule 10b-5, the analogous provisions of federal law to which Illinois courts look in interpreting Section 12 of the Illinois Securities Law.  NCUA's attempt to shoehorn this case into this Court's decision in *FHFA*, which involved the laws of different states modeled after a different provision of the federal securities laws, therefore fails.  Moreover, contrary to NCUA's assertions, Texas law allows courts to consider equitable defenses in deciding whether to grant a statutory remedy of rescission.  Finally, NCUA also fails to establish any prejudice resulting from Morgan Stanley's assertion of the challenged defenses.  For these reasons, the motion should be denied.

## STANDARD OF REVIEW

"Motions to strike are viewed with disfavor and are infrequently granted." *Wireless Ink Corp. v. Facebook, Inc.*, 787 F. Supp. 2d 298, 313 (S.D.N.Y. 2011) (quoting *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 394 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010)).  To succeed on a motion to strike an affirmative defense, the moving party bears the burden of overcoming a "three-part test," *Cnty. Vanlines Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 153 (S.D.N.Y. 2002), which courts in this Circuit have described as "extremely tough," *In re Lehman Bros. Holdings Inc.*, 474 B.R. 441, 447 (Bankr. S.D.N.Y. 2012), and a "heavy burden."  *Saudi Pearl Ins. Co. v. M.V. Aditya Khanti*, No. 95 Civ. 2174 (JFK), 1997 WL 291834, at *7 (S.D.N.Y. June 2, 1997).

First, a motion to strike an affirmative defense "will not be granted unless it appears *to a certainty* that plaintiffs would succeed despite *any state of the facts* which could be proved in support of the defense."  *Keystone Global LLC*, 2014 WL 888336, at *2 (Cote, J.) (ellipses in original) (emphasis added) (quoting *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986))).

Second, "[e]ven when the facts are not disputed," a motion to strike for insufficiency has "never" been a vehicle "for the determination of disputed and substantial questions of law." *Id.* (quoting *Salcer*, 744 F.2d at 939).  Rather, "these questions quite properly are viewed as determinable only after discovery and a hearing on the merits."  *Salcer*, 744 F.2d at 939 (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1381).  Thus, to strike a defense, "the court must be convinced . . . that any questions of law are clear and not in dispute, and that under no set of circumstances could the [defenses] succeed."  *Wyeth v. King Pharm., Inc.*, 396 F. Supp. 2d 280, 293 (E.D.N.Y. 2005) (quoting *Ali v. N.Y. City Transit Auth.*, 176 F.R.D. 68, 70 (E.D.N.Y. 1997)); *cf. Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d

Cir. 2005) (holding, in the context of whether a complaint presents a federal question, that an issue is "disputed and substantial" if the merits would not "be easily resolved in [a party's] favor").  Plaintiff's burden is "particularly" heavy when, "as here, there has been no significant discovery."  *Salcer*, 744 F.2d at 939.

Third, to succeed in striking a defense, a plaintiff must also show that it would be prejudiced by the inclusion of that defense in the answer.  *Cnty. Vanlines*, 205 F.R.D. at 153. "[M]ere assertions by the moving party that he is prejudiced are insufficient."  *Id.*

## ARGUMENT

### I.    NCUA Cannot Satisfy the Exacting Standards for a Motion to Strike

NCUA has failed to demonstrate that the Court should take the extraordinary step of striking Morgan Stanley's defenses at this early stage of the litigation.  First, NCUA cannot show – as it must – that Morgan Stanley's defenses would fail under any set of facts.  Second, NCUA has not (nor could it), establish that its legal arguments are "clear and not in dispute" under both Illinois and Texas law.  Third, NCUA has failed to demonstrate any unfair prejudice that would result from the assertion of Morgan Stanley's defenses.  For each of these independent reasons, NCUA's motion to strike should be denied.

#### A.    NCUA Has Not Shown that Morgan Stanley's Causation Defenses Should Be Stricken

NCUA contends that all causation-based defenses asserted in Morgan Stanley's answer (specifically, the Seventh, Twenty-First, and Twenty-Sixth Defenses) should be stricken because Illinois and Texas law do not recognize a loss causation defense to the claims that NCUA asserts. Mot. to Strike at 3.  NCUA is wrong for the reasons set forth below.

### 1.   NCUA Must Prove Loss Causation to Establish Its Securities Claim Under Illinois Law

Contrary to NCUA's contentions, loss causation is an element of a claim for misrepresentation in the sale of securities under Section 12 of the Illinois Securities Law ("ISL"), just as it is an element of a claim under both Section 17(a) of the federal Securities Act of 1933 (the "'33 Act") and SEC Rule 10b-5, which serve as a model for the interpretation of Section 12 of the ISL.  *See Platinum Partners Value Arbitrage Fund, Ltd. P'ship v. Chicago Bd. Options Exch.*, 976 N.E.2d 415, 423 (Ill. App. Ct. 2012), *appeal denied*, 981 N.E.2d 1003 (Ill. 2012); *Tirapelli v. Advanced Equities, Inc.*, 813 N.E.2d 1138, 1142 (Ill. App. Ct. 2004).

As the Appellate Court of Illinois has explained, Sections 12(F), (G), and (I) of the ISL, which prohibit fraud or misrepresentation in the sale of securities, are "modeled after" Section 17(a) of the '33 Act, which is materially identical to – and indeed, was the template for – SEC Rule 10b-5.  *See Platinum Partners*, 976 N.E.2d at 423 (stating Section 17(a) and Rule 10b-5 "require nearly the same elements"); *Tirapelli*, 813 N.E.2d at 1142 (same); *see generally Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 463 (2d Cir. 1952) (through Rule 10b-5, "the Commission was attempting only to make the same prohibitions contained in Section 17(a) of the 1933 Act applicable to purchasers as well as to sellers").  Illinois courts thus "look to" these two federal provisions to construe the causes of action under Sections 12(F), (G), and (I) of the ISL.  *Platinum Partners*, 976 N.E.2d at 423; *Tirapelli*, 813 N.E.2d at 1142.

Claims under both Section 17(a) of the '33 Act and Rule 10b-5 require that a material misrepresentation "proximately caused the plaintiff's injuries."  *Platinum Partners*, 976 N.E.2d at 423; *Tirapelli*, 813 N.E.2d at 1142; *Maryville Acad. v. Loeb Rhoades & Co.*, 530 F. Supp. 1061, 1066 (N.D. Ill. 1981) ("Courts and commentators . . . have read a causation requirement

into any cause of action under [Section 17 and Rule 10b-5].").[1]  Accordingly, as the Appellate

Court of Illinois and several other courts have found, a cause of action under Section 12 of the

ISL for misrepresentation in the sale of securities requires a showing of loss causation as well.

*See Platinum Partners*, 976 N.E.2d at 423 ("These same elements [as Rule 10b-5] are required to

state a claim under" Section 12 of the ISL);[2] *Hidell v. Int'l Diversified Invs.*, 520 F.2d 529, 536

n.14 (7th Cir. 1975) ("Both parties have assumed, and we agree, that s. 12, subd. G of the Illinois

Act should be interpreted identically with Rule 10b-5."); *Heil v. Lebow*, No. 91 Civ. 8656 (JFK),

1994 WL 637686, at *7 (S.D.N.Y. Nov. 14, 1994) ("The elements of a violation of Section 12 of

the Illinois Securities Law 'generally parallel those for a Rule 10b-5 violation.'" (quoting

*Branch-Hess Vending Servs. Emps.' Pension Trust v. Guebert*, 751 F. Supp. 1333, 1342 (C.D.

Ill. 1990))).

---

[1] In recent years, courts have uniformly held that private plaintiffs may not sue under Section 17(a) of the '33 Act, overruling prior precedent permitting such actions, because granting such a cause of action would "nullify" the other private remedies available under the '33 and '34 Acts.  *See Finkel v. Stratton Corp.*, 962 F.2d 169, 175 (2d Cir. 1992) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)).  At the time the ISL was passed in 1953, however, courts recognized a private right of action under both Section 17(a) and Rule 10b-5, *see, e.g.*, *Fischman v. Raytheon Mfg. Co.*, 188 F.2d 783, 787 n.2 (2d Cir. 1951); *Thiele v. Shields*, 131 F. Supp. 416, 419 (S.D.N.Y. 1955) ("Although Section 17(a) of the 1933 Act and Section 10(b) of the 1934 Act do not expressly provide for private civil remedies, the courts have consistently implied such remedies from the prohibitions of these sections.") (citing cases), which action contained a loss causation requirement.  *See Osborne v. Mallory*, 86 F. Supp. 869, 879 (S.D.N.Y. 1949) (holding a remedy was "available to the investor injured by the seller's fraudulent practices"); *see generally Lexmark Int'l Inc. v. Static Control Components, Inc.*, No. 12-873, 572 U.S. __, 2014 WL 1168967, at *9 (Mar. 25, 2014) (discussing the "venerable" rule, dating to the common law era, that there is a general presumption "that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute").  Indeed, Illinois courts continue to look to the elements of private rights of action under Section 17 and Rule 10b-5 to determine the elements of a Section 12 claim.  *See Platinum Partners*, 976 N.E.2d at 423; *Tirapelli*, 813 N.E.2d at 1142.

[2] *Platinum Partners* concluded that proximate causation was an element of a claim under subsections 12(F) and (I) of the ISL but did not involve a claim under subsection (G).  *See Platinum Partners*, 976 N.E.2d at 43 ("To state a claim under section 10b-5, a complaint must allege . . . that reliance proximately caused the plaintiff's injuries. . . . These same elements are required to state a claim under sections 12(F) and (I). . . ." (citation omitted)); *id.* (stating "the only exception" is that "*scienter*, or intent or knowledge of wrongdoing, is required for liability under section 12(I)).  The court's reasoning, however – that subsections 12(F) and (I) imported a loss causation requirement from Rule 10b-5 because they were modeled after Section 17(a)(1) and (3) of the '33 Act and are materially identical to Rule 10b-5(a) and (c) – applies equally to Section 12(G), which is modeled after Section 17(a)(2) of the '33 Act and is materially identical to Rule 10b-5(b).  *See Platinum Partners*, 976 N.E.2d at 423; *Tirapelli*, 813 N.E.2d at 1142.

NCUA does not cite any of the above case law, let alone attempt to explain why these cases do not establish that loss causation is an element of its Illinois securities claim, and much less why – at a minimum – this case law does not create a disputed legal question unsuited to resolution on a motion to strike.  Instead, NCUA mistakenly argues that this Court's decision in *Federal Housing Finance Agency v. HSBC North America Holdings Inc. ("FHFA")*, Nos. 11 Civ. 6189 (DLC) et al., 2013 WL 6588249 (S.D.N.Y. Dec. 16, 2013), which addressed Virginia and District of Columbia law, governs the interpretation of the Illinois statute at issue here.  Mot. to Strike at 3-4.  *FHFA* is inapposite to this case.  The Virginia and District of Columbia statutes at issue in *FHFA* are "based on the Uniform Securities Act, which itself is modeled on the pre-PSLRA language of Section 12 of the '33 Act," which, according to this Court in *FHFA*, did *not* require loss causation, *FHFA*, 2013 WL 6588249, at *4 (citation omitted), whereas the Illinois statute at issue here is modeled after federal statutory provisions that *do* require loss causation. *See, e.g.*, *Platinum Partners*, 976 N.E.2d at 423; *Tirapelli*, 813 N.E.2d at 1142; *Hidell*, 520 F.2d at 536 n.14; *Heil*, 1994 WL 637686, at *7; *Maryville Acad.*, 530 F. Supp. at 1066.  This distinction undermines NCUA's reliance on *FHFA* and demonstrates that loss causation is an element of NCUA's Illinois claim in this case.[3]

NCUA also mistakenly contends that its claim under the ISL does not require a showing of loss causation because the statute offers the "remedy of rescission," which is supposedly "inconsistent with a loss causation defense."  Mot. to Strike at 4.  That assertion is incorrect.  There is nothing inconsistent in requiring a plaintiff seeking to undo a transaction to first show that the alleged misrepresentation caused it harm.  Indeed, plaintiffs may seek rescission as a

---

[3] *FHFA* is further inapposite because it was decided on summary judgment, after discovery.  As noted, decisions regarding significant legal questions are highly disfavored before discovery in the context of a motion to strike.  *See Salcer*, 744 F.2d at 939.

remedy under Rule 10b-5, and federal courts hold that such actions require proof of loss causation.[4] Moreover, under Illinois law, a plaintiff pursuing an "equitable claim for rescission based on fraud or misrepresentation . . . must reasonably believe [the statement] to be true, and *must act thereon to his damage*." *E.g.*, *Clara Wonjung Lee, DDS, Ltd. v. Rosalina R. Robles, DMD, Ltd.*, No. 1-12-2872, 2014 IL App (1st) 122872-U, at *5 (Ill. App. Ct. Mar. 11, 2014) (Westlaw) (emphasis added).

Finally, NCUA cites two cases pre-dating *Platinum Partners* for the proposition that its claim under the ISL does not contain a loss causation requirement, *Lucas v. Downtown Greenville Investors Ltd. P'ship*, 671 N.E.2d 389, 400 (Ill. App. Ct. 1996), and *Elipas v. Jedynak*, No. 07 C 3026, 2011 WL 1706059, at *11 (N.D. Ill. May 5, 2011). *Lucas* recognized that Sections 12(F) and (G) of the ISL were patterned after Section 17(a) of the '33 Act and contained language that "closely parallels" Rule 10b-5, but it contains no discussion of the case law requiring loss causation for claims under Section 17(a) of the '33 Act and claims seeking rescission under Rule 10b-5. *See* 671 N.E.2d at 395, 399. And *Elipas* merely followed *Lucas*, in dictum and without analysis. 2011 WL 1706059, at *11. These cases should be disregarded in light of the later ruling in *Platinum Partners* and the analysis discussed above.

Even if these cases are not disregarded, however, interpreting Illinois law on this issue consistently with *Platinum Partners*, as opposed to *Lucas* and *Elipas*, would comport with the

---

[4] *See Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1207 (9th Cir. 2012) ("[A] § 10(b) plaintiff must present a showing of economic loss to warrant rescission."); *Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 550 (6th Cir. 2012) (holding loss causation requirement under Rule 10b-5 does not preclude rescission remedy); *Rousseff v. E.F. Hutton Co.*, 843 F.2d 1326, 1329 (11th Cir. 1988) (holding loss causation is a required element of a Rule 10b-5 claim seeking only rescission); *JSMS Rural LP v. GMG Capital Partners III, LP*, No. 04 Civ. 8591 (SAS), 2006 WL 1867482, at *4 (S.D.N.Y. July 6, 2006) (same); *cf. Mott v. Tri-Cont'l Fin. Corp.*, 330 F.2d 468, 470 (2d Cir. 1964) (stating, with respect to a claim for rescission under New York law, that "the plaintiff has failed to cite any case, and we have found none, in which rescission was granted although the plaintiff had disposed of the property acquired under the contract at no loss to himself").

Seventh Circuit's guidance that "given a choice between an interpretation of Illinois law which reasonably restricts liability, and one which greatly expands liability, [courts] should choose the narrower and more reasonable path (at least until the Illinois Supreme Court tells us differently)." *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994) (en banc).  At the very most, the cases would suggest a disputed issue of law unsuitable for resolution on a motion to strike.  *See In re Mass. Mut. Life Ins. Co.*, Civil Action Nos. 11-cv-30035-MAP et al., 2012 WL 5077642, at *4 (D. Mass. Oct. 17, 2012) (refusing to strike loss causation defense prior to discovery because it was "simply too early to decide that this affirmative defense is barred").[5]

### 2.   NCUA Must Prove Transaction Causation to Establish a Claim Under Texas' and Illinois' Blue Sky Laws

Morgan Stanley's causation defenses are also valid for the independent reason that *transaction* causation is plainly an element of NCUA's claims under both the Illinois and Texas Blue Sky Laws, and NCUA does not contend to the contrary.  *See, e.g.*, 815 ILCS 5/12(G) (requiring gaining of money through a sale to have occurred "by means of" a material misstatement or omission); *Pitman v. Lightfoot*, 937 S.W.2d 496, 531 (Tex. App. 1996) (holding the plaintiff must "prove that the untrue statements related to the security *and induced the purchase*." (emphasis added)); *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1419 n.24 (5th Cir. 1993) (same).[6]  All that is required for the permissibility of an affirmative defense is the existence of *some* potential set of facts under which the affirmative defense would be valid.  *Keystone Global*, 2014 WL 888336, at *2.  Morgan Stanley's causation defenses refer

---

[5] For similar reasons as those presented by the Defendants in *FHFA*, Morgan Stanley also believes that loss causation is a defense to a claim for rescission under the Texas Securities Act.

[6] *See generally Movitz v. First Nat'l Bank of Chicago*, 148 F.3d 760, 763 (7th Cir. 1998) (Posner, J.) (distinguishing transaction causation from loss causation, and explaining that transaction causation involves whether the plaintiff "would not have bought the stock, and so would not have sustained the loss, had the defendant been truthful").

generally to "causation" and are thus valid in the event that NCUA cannot show a causal connection between the alleged misstatements and the purchase.

### 3. NCUA Has Not Shown that It Would Suffer Any Prejudice as a Result of Morgan Stanley's Inclusion of Causation-Based Defenses in Its Answer

Finally, NCUA has not shown that it would be prejudiced by the inclusion of Morgan Stanley's causation-based defenses in its answer. *Cnty. Vanlines*, 205 F.R.D. at 153. NCUA's motion contains general assertions that a loss causation defense would increase the costs of discovery and trial because it would require discovery into topics such as "market-wide phenomena, economic factors and/or the acts, conduct or omissions [of] individuals and/or entities other than the Morgan Stanley Defendants that intervened between the Morgan Stanley Defendants' alleged actions and Plaintiff's alleged harm." Mot. to Strike at 5. NCUA, however, has itself put these very same facts at issue in its Complaint by alleging evidence of losses on the mortgages underlying its securities, related borrower defaults and delinquencies, and corresponding rating agency downgrades in support of its claim. Compl. ¶¶ 51-52, 55-85. Particularly in light of the allegations asserted in its Complaint, Morgan Stanley's assertion of a loss causation defense raises no new factual issues that would unfairly prejudice NCUA, and NCUA has not satisfied its burden of showing that prejudice will flow from the assertion of such a defense. *See Regents Ins. Co. v. Storm King Contracting, Inc.*, No. 06 Civ. 2879 (LBS), 2008 WL 563465, at *15 (S.D.N.Y. Feb. 27, 2008) ("Plaintiff has not produced any evidence that it would be somehow prejudiced by the affirmative defenses asserted by [the defendants] . . . .").

**B.    NCUA Has Not Shown that Morgan Stanley's Equitable Defenses Should Be Stricken**

NCUA also argues that the "equitable" defenses asserted in Morgan Stanley's answer[7] should be stricken, because they are supposedly unavailable under either Illinois or Texas law. Mot. to Strike at 6-7.  That is not the case.  Texas courts have recognized that equitable defenses may be "a factor to be considered by the trial court in determining whether to grant rescission" under the Texas Securities Act ("TSA").  *Aegis Ins. Holding Co. v. Gaiser*, No. 04-05-00938-CV, 2007 WL 906328, at *6 (Tex. App. Mar. 28, 2007).  That is because rescission is a remedy that "lies within [the] trial court's discretion," "whether at common law or as statutory remedy." *Id.* (citing *Tex. Capital Sec., Inc. v. Sandefer*, 58 S.W.3d 760, 774 (Tex. App. 2001)).  Indeed, the Court of Appeals in *Aegis* cited a prior decision that explicitly held that equitable defenses were a factor to be considered in determining whether to grant the remedy of rescission under another Texas statute, the Deceptive Trade Practices Act ("DTPA").  *See Aegis*, 2007 WL 906328, at *6 (citing *Schenck v. Ebby Halliday Real Estate, Inc.*, 803 S.W.2d 361, 367 (Tex. App. 1990)).

NCUA is thus incorrect to assert that a valid claim for rescission under the TSA "can only be excused on the basis of explicit statutory defenses."  Mot. to Strike at 6.  As *Schenck* explained in the context of the DTPA, while "common-law defenses" do not categorically defeat statutory claims under the DTPA, "in this instance we are addressing the availability of a remedy."  *Schenck*, 803 S.W.2d at 367.  Viewing the issue as one of remedy rather than legal liability, the court held that "[w]e find the [plaintiffs'] unclean hands, as determined by the jury,

---

[7] These are Morgan Stanley's Seventeenth, Eighteenth, Nineteenth, Twenty-Second, Twenty-Fourth, and Twenty-Ninth Defenses.

to be a factor in affording the equitable remedy of rescission permitted under D.T.P.A." *Id.*[8]

Accordingly, because equitable defenses are relevant to the appropriateness of a rescission

remedy provided by statute under Texas law, NCUA has not carried its burden of showing that

there are no state of facts and no substantial questions of law concerning the availability of such

defenses, *see Keystone Global LLC*, 2014 WL 888336, at *2, and Morgan Stanley is entitled to

discovery bearing on each of the equitable defenses asserted in its answer.

In any event, NCUA has not met its burden of establishing that it would be prejudiced as

a result of Morgan Stanley's assertion of equitable defenses.  NCUA offers the conclusory

assertion that striking such defenses "would avoid burdensome discovery into the Credit Unions'

conduct that would not establish any legally relevant facts," Mot. to Strike at 7, but it ignores that

Morgan Stanley's unchallenged defenses based on reliance, knowledge, and the statute of

limitations, among others, already provide a basis for significant "discovery into the Credit

Unions' conduct" that will substantially overlap with discovery related to equitable defenses.[9]

---

[8] For this reason, the cases under Texas law cited by NCUA are all inapposite, as they address whether equitable defenses can be used to categorically defeat a statutory claim under the TSA, as opposed to whether such defenses can be grounds for a court to refuse to afford the discretionary *remedy* of rescission.  Indeed, *Insurance Co. of North America v. Morris*, 928 S.W.2d 133, 154 (Tex. App. 1996), on which NCUA relies for support, Mot. to Strike at 7, recognizes that the DTPA and the TSA are similarly situated with respect to the availability of equitable defenses.

[9] For example, (i) Morgan Stanley's laches defense is similar to its statute of limitations defense, *see Calzaturificio Rangoni, S.A. v. U.S. Shoe Corp.*, No. 92 Civ. 2020 (JFK), 1993 WL 485753, at *2 (S.D.N.Y. Nov. 23, 1993) (because defendant had "long asserted a laches defense," permitting a statute of limitations defense would not "necessitate additional discovery or delay the trial"); (ii) Morgan Stanley's waiver defense substantially overlaps with any determination of potential rescissory damages based on NCUA's acceptance of payments in connection with the securities at issue; (iii) Morgan Stanley's defenses of *in pari delicto*, equitable estoppel, unjust enrichment, and ratification, would all involve substantially overlapping discovery with Morgan Stanley's knowledge defense, *see, e.g.*, *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515 (Tex. 1998) (holding equitable estoppel requires a showing that the opposing party knowingly misrepresented or concealed material facts); *Ohrt v. Union Gas Corp.*, 398 S.W.3d 315, 328 (Tex. App. 2012) (ratification established by recognition of a contract with knowledge of all relevant facts); *Owen v. Jim Allee Imps., Inc.*, 380 S.W.3d 276, 286-87 (Tex. App. 2012) (holding that a party who has knowledge "of the structure of the [allegedly illegal] transaction" was *in pari delicto* and could not "then benefit from the alleged violation"); *Casstevens v. Smith*, 269 S.W.3d 222, 230 (Tex. App. 2008) (holding a party may recover in unjust enrichment only from another party who has "some connection with the wrongdoing"), and (iv) Morgan Stanley's defense based on negligence or a lack of due diligence is, among other things, analogous to its statute of limitations defense, which requires showing whether (….continued)

NCUA's conclusory assertion of prejudice accordingly fails to satisfy its burden, especially at this early stage of the litigation, that it would be prejudiced by the assertion of Morgan Stanley's equitable defenses. *See Cnty. Vanlines*, 205 F.R.D. at 153 ("[M]ere assertions by the moving party that he is prejudiced are insufficient.").[10]

### C. NCUA's Attempt to Strike Certain of Morgan Stanley's Defenses Pursuant to *Twombly* and *Shechter* Must Fail

#### 1. *Twombly* and *Shechter* Did Not *Sub Silentio* Overrule the Established Standard for Deciding Motions to Strike Affirmative Defenses

Finally, NCUA contends that Morgan Stanley's First, Fifteenth, Seventeenth, Twenty-Second, Twenty-Fourth, Twenty-Fifth, Twenty-Eighth, Twenty-Ninth, and Thirtieth Defenses should be stricken for inadequate pleading based on the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and the Second Circuit's earlier decision in *Shechter v. Comptroller of City of N.Y.*, 79 F.3d 265 (2d Cir. 1996). Mot. to Strike at 2, 7-8. This argument is based on a misstatement of the relevant legal standard.

Contrary to NCUA's argument, neither *Twombly* nor *Shechter sub silentio* overruled the established legal standard for deciding a motion to strike an affirmative defense. *See, e.g.*, *Hon Hai Precision Indus. Co. v. Wi-LAN, Inc.*, No. 12 Civ. 7900 (SAS), 2013 WL 2322675, at *8-9 & n.96 (S.D.N.Y. May 28, 2013) (holding that an answer need only "state" an affirmative defense and that the plausibility standard of *Twombly* accordingly does not apply, and citing

---

(continued….)

"discovery should have been made [by the plaintiff] by the exercise of reasonable diligence," Tex. Rev. Civ. Stat. Ann. art. 581, § 33(H)(3)(a).

[10] Similarly, NCUA does not show that it would be prejudiced by Morgan Stanley's Eighth and Ninth Defenses. The Eighth Defense requires no additional discovery, as it simply states that damages under Section 11, should such a claim be reinstituted, may not exceed the offering price, and NCUA does not argue to the contrary. Answer at 73; Mot. to Strike at 5-6. Morgan Stanley's Ninth Defense, as NCUA concedes, involves only Morgan Stanley's reliance on third parties, *id.*, and thus would not, should it become relevant, necessitate any discovery from NCUA itself.

cases).[11]  Indeed, this Court has continued to apply the *Salcer* standard for a motion to strike affirmative defenses post-*Shechter* and *Twombly*.  *See Keystone*, 2014 WL 888336, at *2 (Cote, J.) (applying the standard set forth in *Salcer*, 744 F.2d at 939).  NCUA's contention that these defenses were inadequately pled must therefore fail.

The *Twombly* pleading standard, by its own terms, applies only to claims within the meaning of Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).  A different pleading standard applies to defenses asserted in an answer, which are covered by Federal Rule of Civil Procedure 8(c).  Rule 8(c) requires only that "a party . . . affirmatively state any avoidance or affirmative defense . . . ."  No "showing" is required.  This "textual distinction between Rule 8(a)(2) and Rule 8(c) is sufficient to show that the *Twombly* standard does not apply to affirmative defenses."  *Hon Hai*, 2013 WL 2322675, at *9.

Moreover, there are a "host of" additional factors that justify treating the pleading standards for claims under Rule 8(a)(2) and for defenses under Rule 8(c) differently.  *See Chevron*, 886 F. Supp. 2d at 266 n.201.  Among others, (1) there is a "diminished concern" that plaintiffs receive notice from defenses stated in an answer "in light of their ability to obtain more information during discovery"; (2) at the answer stage there is an "absence of a concern that the defense is 'unlocking the doors of discovery'"; (3) refusing to strike defenses in an answer

---

[11] Although NCUA cites cases to the contrary, the "majority of district courts in this Circuit to consider the issue have held that affirmative defenses are not subject to the pleading standard of *Twombly*."  *Hon Hai*, 2013 WL 2322676, at *9.  Those that have reached a contrary view did so "often without much analysis."  *Chevron Corp. v. Donziger*, 886 F. Supp. 2d 235, 266 n.201 (S.D.N.Y. 2012).

imposes "limited discovery costs, in relation to the costs imposed on a defendant [from striking the answer], since it is unlikely that either side will pursue discovery on frivolous defenses"; (4) there is "unfairness" in "holding the defendant to the same pleading standard as the plaintiff, when the defendant has only a limited time to respond after service of the complaint while plaintiff has until the expiration of the statute of limitations"; and (5) an onerous pleading standard for defenses creates "the risk that a defendant will waive a defense at trial by failing to plead it at the early stage of the litigation." *Id.* (quoting *Bayer CropScience AG v. Dow AgroSciences LLC*, No. 10 Civ. 1045 RMB/JS, 2011 WL 6934557, at *1-2 (D. Del. Dec. 30, 2011)).

For similar reasons, courts in this District have held that the Second Circuit's decision in *Shechter* is inapposite to the standards for surviving a motion to strike. That case involved not a Rule 12(f) motion by the plaintiff to strike an affirmative defense, but a Rule 12(c) motion by the defendant for judgment on the pleadings. *See Scott v. WorldStarHipHop, Inc.*, No. 10 Civ. 9538 (PKC), 2012 WL 5835232, at *3 (S.D.N.Y. Nov. 14, 2012) ("*Shechter* considered a motion for judgment on the pleadings and did not address the standard for striking an affirmative defense under Rule 12(f). . . ."). In *Shechter*, the defendant contended that it was entitled to a judgment in its favor on grounds of qualified immunity, based on the facts pleaded in the complaint and answer. *Shechter*, 79 F.3d at 268. The court affirmed a denial of qualified immunity, holding that the only allegation or evidence supporting the defendant's argument was a "bald assertion" that it was entitled to such immunity. *Id.* at 270. Here, by contrast, Morgan Stanley is not seeking a judgment in its favor based on the affirmative defenses in its answer and the allegations in the pleadings, but rather is merely seeking to state its defenses to preserve them. *See Wireless Ink*, 787 F. Supp. 2d at 313 n.5 (expressly distinguishing *Shechter* as involving the

14

standard for a "judgment on the pleadings," rather than a motion to "strike the defense under Rule 12(f)").[12]

In sum, Morgan Stanley has "state[d]" its defenses as required by Rule 8(c). No more is required. *See Scott*, 2012 WL 5835232, at *3 ("WorldStar has 'stated' its affirmative defenses in accordance with Rule 8(c), Fed. R. Civ. P. Accordingly, plaintiff has failed to meet the high standard governing a motion to strike."); *Saudi Pearl*, 1997 WL 291834, at *7 (denying motion to strike affirmative defenses as legally insufficient merely because plaintiff argued they were "couched in wholly hypothetical and speculative terms" (internal quotation marks omitted)).

### 2. NCUA Has Not Satisfied the Other Elements of Its Motion to Strike with Respect to the Defenses It Challenges Under *Twombly* and *Shechter*

Even under the standards set forth in *Twombly* and *Shechter*, NCUA has not demonstrated that Morgan Stanley's defenses should be stricken.

*First Defense (Failure to State a Claim)* – The law is clear that Morgan Stanley may assert as a defense in its answer that NCUA does not "state facts sufficient to constitute a cause of action." Answer at 71; *See DiModica v. U.S. Dep't of Justice*, No. 05 Civ. 2165 (GEL), 2006 WL 89947, at *2 (S.D.N.Y. Jan. 11, 2006) ("It is difficult to see how any prejudice could result from any of DOJ's asserted defenses, as they all relate to jurisdictional defects or failure to state a claim."); *Berdeguez v. United Bhd. of Carpenters & Joiners of Am.,* No. 93 Civ. 0552 (LBS), 1996 WL 551722, at *7 (S.D.N.Y. Sept. 26, 1996) ("Courts confronted by motions to strike the affirmative defense that the complaint fails to state a claim upon which relief may be granted have characterized such a defense as a general denial, necessitating no more for rebuttal than that

---

[12] NCUA also relies on *EEOC v. Kelley Drye & Warren, LLP*, No. 10 Civ. 655 (LTS), 2011 WL 3163443, at *2 (S.D.N.Y. July 25, 2011), in support of its argument that Morgan Stanley's defenses should be stricken. Mot. to Strike at 2, 7. But *Kelley Drye* merely applied *Shechter*, erroneously and without any explanation or discussion. *See Scott*, 2012 WL 5835232, at *3 (rejecting standard used in *Kelley Drye*); *Kelley Drye*, 2011 WL 3163443, at *2.

the plaintiff prove his case . . . . Having to prove one's case does not constitute prejudice."
(citations omitted)).

      *Fifteenth Defense (Contribution)* – NCUA has similarly failed to explain how it could be
prejudiced by Morgan Stanley seeking "contribution from others" for any potential liability to
NCUA, such as pursuant to an applicable indemnification agreement, Answer at 75, and NCUA
does not contend that there are no facts under which such contribution may be available.

      *Seventeenth, Twenty-Second, Twenty-Fourth, and Twenty-Ninth Defenses (Equitable
Defenses)* – As NCUA concedes, Morgan Stanley's defenses based on the Credit Unions' own
negligence or lack of due diligence, unclean hands, equitable estoppel, *in pari delicto*, laches,
and unjust enrichment are "equitable defenses."  Mot. to Strike at 6-7.  They are therefore
relevant to the availability of a rescission remedy under Texas law.  *See* Part I.B, *supra*.  They
furthermore seek substantially similar evidence as Morgan Stanley's unchallenged defenses
based on reliance, knowledge and the statute of limitations, among other things, and accordingly
NCUA has not shown prejudice.

      *Twenty-Fifth Defense (Standing)* – Lack of standing "is jurisdictional" and "cannot be
waived."  *E.g.*, *Valentini v. Citigroup, Inc.*, No. 11 Civ. 1355 (JMF), 2013 WL 4407065, at *7
(S.D.N.Y. Aug. 16, 2013).  Standing is thus necessarily at issue in this case, and NCUA cannot
be prejudiced by Morgan Stanley's assertion of a standing defense.  *See DiModica*, 2006 WL
89947, at *2.

      *Twenty-Eighth Defense (Failure to Join Indispensable Parties)* – Because "'[t]he absence
of an indispensable party is considered to be so significant a defect that most courts have
indicated that it may be raised for the first time subsequent to the trial or on appeal,'" *Roh v.
DeVack*, No. 3:07-CV-1901 (CSH), 2010 WL 5069874, at *2 n.2 (D. Conn. 2010) (quoting

*Bartfield v. Murphy*, 578 F. Supp. 2d 638, 645 (S.D.N.Y. 2008)), Morgan Stanley is entitled to raise the defense at this early stage of the litigation in the event it is determined through discovery that other parties should have been joined.

 <u>*Thirtieth Defense (Incorporation of Other Defendants' Defenses)*</u> – NCUA contends, without citation to any authority, that Morgan Stanley's incorporation by reference of the defenses of defendants in related actions is improper.  *See* Mot. to Strike at 8.  However, Federal Rule of Civil Procedure 10(c) explicitly permits this type of pleading by reference.  *See* Fed. R. Civ. P. 10(c) ( "A statement in a pleading may be adopted by reference elsewhere in the same pleading *or in any other pleading* . . . ." (emphasis added)); *see also Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 323 n.5 (S.D.N.Y. 2007).  NCUA does not explain how any of the defenses asserted by other defendants would supposedly fail under any set of facts, lack a substantial basis in law, or cause it unfair prejudice.  Accordingly, NCUA has failed to carry its burden to show that Morgan Stanley's Thirtieth Defense should be stricken.

## CONCLUSION

For the foregoing reasons, Morgan Stanley respectfully submits that this Court should deny NCUA's Motion to Strike Certain Affirmative Defenses.  In the alternative, if the Court determines that it should strike any of Morgan Stanley's defenses, Morgan Stanley respectfully requests an opportunity to file an amended, more specific pleading.[13]

Dated:   New York, New York
            April 4, 2014

By:   /s/ James P. Rouhandeh

James P. Rouhandeh
Paul S. Mishkin
Daniel J. Schwartz
Jane M. Morril
Scott Wilcox

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:      (212) 450-4000
Facsimile:      (212) 701-5800

*Attorneys for Defendants Morgan Stanley*
*& Co., Inc., n/k/a Morgan Stanley & Co.*
*LLC, and Morgan Stanley Capital I Inc.*

---

[13] *See Chevron*, 886 F. Supp. 2d at 266 n.201 (stating that, to the extent a court strikes defenses from an answer, "leave to amend is routinely granted" (internal quotation marks omitted)).