UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                          :
NATIONAL CREDIT UNION ADMINISTRATION      :
BOARD, as Liquidating Agent of            :
Southwest Corporate Federal Credit        :   13 Civ. 6705 (DLC)
Union and Members United Corporate        :
Federal Credit Union,                     :   OPINION & ORDER
                                          :
                      Plaintiff,          :
                                          :
       -v-                                :
                                          :
MORGAN STANLEY & CO., INC. and MORGAN     :
STANLEY CAPITAL I INC.,                   :
                                          :
                      Defendants.         :
                                          :
------------------------------------------X

APPEARANCES:

For the Plaintiff:

David Fredrick, Wan J. Kim, Gregory G. Rapawy, and Andrew C.
Shen
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
Sumner Square, 1615 M Street, N.W., Suite 400
Washington, DC 20036

Erik Haas, Peter W. Tomlinson, Phillip R. Forlenza, and Michelle
W. Cohen
Paterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

George A. Zelcs
Korein Tillery LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601

Stephen M. Tillery, Greg G. Gutzler, Peter H. Rachman, and
Robert L. King
Korein Tillery LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101

For the Defendants:

James P. Rouhandeh, Paul S. Mishkin, Daniel J. Schwartz, and
Jane M. Morril
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017


DENISE COTE, District Judge:

This is one of seven actions brought in this district by

the National Credit Union Administration Board ("NCUA"), as

liquidating agent of Southwest Corporate Federal Credit Union

("Southwest") and Members United Corporate Federal Credit Union

("Members United") (collectively, the "Credit Unions"), against

various financial institutions involved in the packaging,

marketing, and sale of residential mortgage-backed securities

that the Credit Unions purchased in the period from 2005 to

2007.[1]  This action is brought against Morgan Stanley & Co., Inc.

and Morgan Stanley Capital I Inc. (collectively "Morgan

---

[1] Nat'l Credit Union Admin. Bd. ("NCUA") v. Morgan Stanley & Co.,
Inc., et al., 13 Civ. 6705 (DLC); NCUA v. Wachovia Capital
Markets, LLC n/k/a Wells Fargo Secs., LLC, 13 Civ. 6719 (DLC);
NCUA v. Goldman Sachs & Co., et al., 13 Civ. 6721 (DLC); NCUA v.
RBS Secs., Inc., et al., 13 Civ. 6726 (DLC); NCUA v. Barclays
Capital, Inc., 13 Civ. 6727 (DLC); NCUA v. UBS Secs., LLC, 13
Civ. 6731 (DLC); and NCUA v. Credit Suisse Secs. (USA) LLC, et
al., 13 Civ. 6736 (DLC).
      Two other actions, initially brought by NCUA, have since
settled.  NCUA v. Bear Stearns & Co., et al., 13 Civ. 6707
(DLC); NCUA v. Residential Funding Secs., LLC n/k/a Ally Secs.,
LLC, 13 Civ. 6730 (DLC).
      Seven other actions are currently being brought by NCUA
against these and other defendants in Kansas and California.

Stanley"), and it asserts claims under the Illinois Securities Law of 1953, 815 Ill. Comp. Stat. Ann. 5/12 & 13 (2013) ("Illinois Blue Sky Law"), and under the Texas Securities Act, Tex. Rev. Civ. Stat. Ann. art. 581, § 33 (2013) ("Texas Blue Sky Law").

On March 18, 2014, NCUA moved to strike sixteen of the thirty-one affirmative defenses in Morgan Stanley's February 25, 2014 answer.  For the reasons stated below, NCUA's motion to strike is granted in part: twelve of Morgan Stanley's defenses will be struck.

BACKGROUND

This action involves alleged misrepresentations in the offering materials for residential mortgage backed securities purchased by NCUA.  In its complaint filed on September 23, 2013, NCUA also asserted claims under Sections 11 and 12(a)(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k, *l*(a)(2) (2012) ("Securities Act").

On November 13, Morgan Stanley moved to dismiss all claims. In an Opinion and Order of January 22, 2014, the motion was granted in part.  The federal claims were dismissed as time-barred, but the state law claims survived.  NCUA v. Morgan Stanley & Co., Inc., et al., 13 Civ. 6705 (DLC), 2014 WL 241739 (S.D.N.Y. Jan. 22, 2014).

On February 25, Morgan Stanley filed an answer.  The answer included thirty-one affirmative defenses.  At issue in the present motion are the following sixteen affirmative defenses:

- Defense No. 1: The Complaint fails to state a cause of action against Morgan Stanley.

- Defense No. 7: NCUA's claims are barred because Morgan Stanley's conduct was not the cause of NCUA's losses or damages.  Any losses or damages were caused by other factors, such as market-wide phenomena and intervening acts by non-parties.

- Defense No. 8: Any liability for damages under Section 11 of the Securities Act may not exceed the total price at which the securities were offered to the public.  See 15 U.S.C. § 77k(e)(3).

- Defense No. 9: NCUA's claims are barred because the alleged misstatements or omissions attributed to Morgan Stanley were based on the work of others, including experts, upon which the Morgan Stanley reasonably relied.  See 15 U.S.C. § 77k(b)(3)(A).

- Defense No. 15: Morgan Stanley is entitled to recover contribution from others for any liability incurred in this matter.

- Defense No. 17: NCUA's claims are barred by its own negligence and the negligence of Southwest and/or Members United, including the failure to undertake due diligence.

- Defense No. 18: NCUA has waived any claims against Morgan Stanley, in part because it continues to receive payments on some or all of the securities that Southwest and/or Members United purchased.

- Defense No. 19: NCUA, Southwest, and/or Members United have ratified and/or consented to the alleged acts, omissions and conduct of which NCUA now complains.  This ratification/consent, inter alia, prohibits NCUA from obtaining relief, including rescission.

- Defense No. 21: NCUA's claims are barred because the

injuries allegedly sustained were caused by the actions or inactions of parties and/or events outside of Morgan Stanley's custody and control.

- <u>Defense No. 22</u>: NCUA's claims are barred by the doctrine of laches.

- <u>Defense No. 24</u>: NCUA's claims are barred by equitable estoppel, waiver, unclean hands, <u>in pari delicto</u>, and/or other equitable doctrines.

- <u>Defense No. 25</u>: NCUA's claims are barred because NCUA lacks standing to assert its claims.

- <u>Defense No. 26</u>: NCUA's claims are barred because any of NCUA's loss was not caused by any alleged misrepresentation or omission by Morgan Stanley.

- <u>Defense No. 28</u>: NCUA's claims are barred because one or more parties not named in the Complaint may be indispensable parties to this action, and Morgan Stanley reserves the right to seek the joinder of those parties whose absence from the action renders it such that complete relief cannot be granted without the missing party.

- <u>Defense No. 29</u>: NCUA would be unjustly enriched if it were permitted to obtain recovery in this action.

- <u>Defense No. 30</u>:  To the extent applicable, Morgan Stanley hereby adopts and incorporates by reference any and all other defenses asserted by any other defendant in any related action brought by NCUA in the United States District Court for the Southern District of New York.

On March 28, NCUA moved to strike these defenses.  The details of the motion will be addressed below.  The motion was fully submitted on April 18.[2]

---

[2] The present motion to strike was filed only in the lead New York action, <u>NCUA v. Morgan Stanley & Co., Inc., et al.</u>, 13 Civ. 6705 (DLC), with a joint stipulation between the parties in four of the related New York actions that the deadline for filing any follow-on motions to strike would be ten days after this Court

DISCUSSION

A court may strike any "insufficient defense."
Fed.R.Civ.P. 12(f).  A motion to strike an affirmative defense
for legal insufficiency is "not favored," however.  William Z.
Salcer, Panfeld, Edelman et al. v. Envicon Equities Corp., 744
F.2d 935, 939 (2d Cir. 1985), vacated on other grounds, 478 U.S.
1015 (1986).  Such a motion "will not be granted unless it
appears to a certainty that plaintiffs would succeed despite any
state of the facts which could be proved in support of the
defense."  Id. (citation omitted).  "[W]here the defense is
insufficient as a matter of law," however, "the defense should
be stricken to eliminate the delay and unnecessary expense from
litigating the invalid claim."  SEC v. KPMG, 03 Civ. 671 (DLC),
2003 WL 21976733, at *2 (S.D.N.Y. Aug. 20, 2003) (citation
omitted).

A plaintiff must establish three criteria to prevail on a
motion to strike an affirmative defense:  First, there must be

---

rules on the present motion.  NCUA v. Goldman Sachs & Co., et
al., 13 Civ. 6721 (DLC); NCUA v. RBS Secs., Inc., et al., 13
Civ. 6726 (DLC); NCUA v. Barclays Capital, Inc., 13 Civ. 6727
(DLC); and NCUA v. Credit Suisse Secs. (USA) LLC, et al., 13
Civ. 6736 (DLC).
    The joint-stipulation does not extend to the two remaining
related New York actions because, whereas the previous
defendants have answered the complaints in their actions, these
remaining defendants have either moved to dismiss the complaint,
NCUA v. Wachovia Capital Markets, LLC n/k/a Wells Fargo Secs.,
LLC, 13 Civ. 6719 (DLC), or have not yet answered or otherwise
responded to the operative complaint, NCUA v. UBS Secs., LLC, 13
Civ. 6731 (DLC).

no question of fact that might allow the defense to succeed. Second, there must be no substantial question of law that might allow the defense to succeed.  Third, the plaintiff must be prejudiced by the inclusion of the defense.  KPMG, 2004 WL 21976733, at *2; see also DGM Investments, Inc. v. New York Futures Exch., Inc., 01 Civ. 11602 (RWS), 2004 WL 635743, at *1 (S.D.N.Y. Mar. 31, 2004).  "Increased time and expense of trial may constitute sufficient prejudice to warrant granting plaintiff's Rule 12(f) motion."  Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269, 272 (S.D.N.Y. 1999).

For ease of discussion, NCUA's motion can be grouped into three categories.  First, in light of the dismissal of NCUA's federal claims, NCUA moves to strike the loss causation defenses (Defenses 7, 21, 26) and two other exclusively federal defenses (Defenses 8, 9).  Second, NCUA moves to strike all non-statutory defenses (Defenses 17, 18, 19, 22, 24, 29).  Third, NCUA moves to strike other defenses as insufficiently pled (Defenses 1, 15, 25, 28, 30 -- excluding defenses already listed).  Each category will be addressed in turn.


I. Loss Causation Defenses and Federal Defenses

NCUA's motion to strike Defenses 7, 8, 9, 21, and 26 is granted.  Morgan Stanley does not dispute that Defenses 8 and 9, which cite specifically to federal law, must be stricken in

light of this Court's dismissal of NCUA's federal claims.  The remaining defenses, which are either explicitly or implicitly loss causation defenses, are insufficient under Rule 12(f), Fed.R.Civ.P., because such defenses do not exist under either Section 12(G) the Illinois Blue Sky Law or Section 33(A)(2) of the Texas Blue Sky Law under which this action now proceeds.  Accordingly, there is no question of law or fact that would permit these defenses to succeed, and the possible cost of discovery related to these insufficient defenses constitutes sufficient prejudice to grant the motion to strike.

Only a brief discussion is necessary to establish that no loss causation defense exists under Section 33(A)(2) of the Texas Blue Sky Law.  Section 33(A)(2) reads as follows:

> Untruth or Omission.  A person who offers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity for rescission, or for damages if the buyer no longer owns the security.  However, a person is not liable if he sustains the burden of proof that either (a) the buyer knew of the untruth or omission or (b) he (the offeror or seller) did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.  The issuer of the security (other than a government issuer identified in Section 5M) is not entitled to the defense in clause (b) with respect to an untruth or omission (i) in a prospectus required in connection with a registration statement under Section 7A, 7B,

or 7C, or (ii) in a writing prepared and delivered
by the issuer in the sale of a security.

Tex. Rev. Civ. Stat. Ann. art. 581, § 33(A)(2) (emphasis added).

The Texas Supreme Court has not analyzed whether the loss
causation defense exists under Section 33(A)(2).  It is the duty
of this Court in such circumstances to predict how that court
would construe Section 33(A)(2).  In re Thelen LLP, 736 F.3d
213, 219 (2d Cir. 2013).  In so doing, "where an intermediate
appellate state court rests its considered judgment upon the
rule of law which it announces, that is a datum for ascertaining
state law which is not to be disregarded by a federal court
unless it is convinced by other persuasive data that the highest
court of the state would decide otherwise."  West v. AT&T, 311
U.S. 223, 237 (1940).  "Other data include relevant case law
from other jurisdictions on the same or analogous issues,
scholarly writings in the field, and any other resources
available to the state's highest court."  Fieger v. Pitney Bowes
Credit Corp., 251 F.3d 386, 399 (2d Cir. 2001) (citation
omitted).

In Duperier v. Texas State Bank, 28 S.W.3d 740 (Tex. Ct.
App. Corpus Christi 2000), the Texas appellate court held that
loss causation is not a defense under Section 33(A)(2).  Id. at
753 ("Loss causation is not an element of or a defense to a
claim brought under [Section 33(A)(2)] of the Act.").  And there

9

is no persuasive data to the contrary.  The text of Section 33(A)(2) expressly provides for two affirmative defenses,[3] and loss causation is not one of them.  By negative implication, it is not a defense.  Moreover, Section 33(A)(2) was modeled off Section 12 of the Securities Act, Flowers v. Dempsey-Tegeler & Co., 472 S.W.2d 112, 114 (Tex. 1971), and it is well established that, prior to the 1995 amendment of Section 12, loss causation was not an affirmative defense to a Section 12 claim.  Randall v. Loftsgaarden, 478 U.S. 647, 659 (1986); see also Fed. Hous. Fin. Agency ("FHFA") v. HSBC N. Am. Holdings, 11 Civ. 6189 (DLC), 2013 WL 6588249, at *2-*3.  Thus, given the text of the statute, the holding in Duperier, and the absence of persuasive arguments to the contrary, this Court predicts that the Texas Supreme Court would hold that there is no loss causation defense under Section 33(A)(2) of the Texas Blue Sky Law.[4]

Establishing the same conclusion with regard to Section 12(G) of the Illinois Blue Sky Law requires only slightly more discussion.  Section 12(G), along with the related Sections 12(F) and 12(I), reads as follows:

---

[3] One of these two defenses, that of due diligence by the defendant, is likely unavailable here, as NCUA's claims relate to alleged misstatements or omissions in prospectus statements, for which the due diligence defense is not applicable.  Tex. Rev. Civ. Stat. Ann. art. 581, § 33(A)(2).

[4] Notably, Morgan Stanley makes virtually no attempt to argue that a loss causation defense exists here, relegating its entire argument to a conclusory footnote.

> It shall be a violation of the provisions of this Act for any person:
>
> (F) To engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof.
>
> (G) To obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.
>
> . . .
>
> (I) To employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly.

815 Ill. Comp. Stat. Ann. 5/12.  The Illinois Supreme Court has not analyzed Section 12(G), and thus this Court must predict how that court would construe Section 12(G), which includes considering decisions of the Illinois appellate courts.

In Lucas v. Downtown Greenville Investors Ltd P'ship, 671 N.E.2d 389 (Ill. App. Ct. 2d Dist. 1996), the Illinois appellate court held that loss causation is not a defense under the Illinois Blue Sky Law.  See id. at 398-400.  The Lucas court's conclusion was based principally on two arguments.  First, there is no "express statutory language [in the Illinois Blue Sky Law] or other authority which requires that the plaintiffs prove 'loss causation.'"  Id. at 400.  Second, while loss causation is an element of common-law fraud or analogous statutory claims,

"Illinois courts have not interpreted actions brought under the [Illinois Blue Sky Law] to be based in common-law fraud or tort." Id. at 399. Thus Lucas held that loss causation is not a defense under the Illinois Blue Sky Law generally, and specifically not a defense under Section 12(G).

There is no persuasive data to suggest that Lucas was wrongly decided. Section 12(G) of the Illinois Blue Sky Law is notable, even among state blue sky laws, in that it does not provide for any affirmative defenses to liability. Cf., e.g., Tex. Rev. Civ. Stat. Ann. art. 581, § 33(A) (providing expressly for affirmative defenses under the Texas Blue Sky Law). It follows a fortiorari that there is no loss causation defense under Section 12(G).

This conclusion is underscored by the legislative history of Section 12(G). According to the definitive treatise of the Illinois Securities Act of 1953, which is the foundation for the modern Illinois Blue Sky Law, Section 12(G) was "based on Section 17 of the Securities Act." Samuel H. Young, Interpretive Comments and Notes on Sections of the Securities Law of 1953 as Amended, S.H.A. Ch. 121 1/2, Appendix, at 629 (1960). Section 17(a) of the Securities Act reads as follows:

> It shall be unlawful for any person in the offer or sale of any securities (including security-based swaps) or any security-based swap agreement (as defined in section 78c(a)(78) of this title) by the use of any means or instruments of transportation or

communication in interstate commerce or by use of the
mails, directly or indirectly

(1) to employ any device, scheme, or artifice to
defraud, or

(2) to obtain money or property by means of any untrue
statement of a material fact or any omission to state
a material fact necessary in order to make the
statements made, in light of the circumstances under
which they were made, not misleading; or

(3) to engage in any transaction, practice, or course
of business which operates or would operate as a fraud
or deceit upon the purchaser.

15 U.S.C. § 77q(a).  Plainly, Section 12(G) of the Illinois Blue

Sky Law was modelled directly off Section 17(a)(2) of the

Securities Act, whereas Sections 12(F) and 12(I) were modelled

off Sections 17(a)(3) and 17(a)(1) respectively.  And the

language of Section 17(a)(2) of the Securities Act is materially

identical to that of the pre-1995 Section 12 of the Securities

Act.  See 15 U.S.C. § 77*l*(a)(2)[5]; Ballay v. Legg Mason Wood

---

[5] Section 77*l*(a)(2) provides that "[a]ny person" who "offers or
sells a [covered] security" "by the use of any means or
instruments of transportation or communication in interstate
commerce or of the mails, by means of a prospectus or oral
communication, which includes an untrue statement of a material
fact or omits to state a material fact necessary in order to
make the statements, in the light of the circumstances under
which they were made, not misleading (the purchaser not knowing
of such untruth or omission), and who shall not sustain the
burden of proof that he did not know, and in the exercise of
reasonable care could not have known, of such untruth or
omission shall be liable, subject to subsection (b) of this
section, to the person purchasing such security from him, who
may sue either at law or in equity in any court of competent
jurisdiction, to recover the consideration paid for such
security with interest thereon, less the amount of any income

<u>Walker, Inc.</u>, 925 F.2d 682, 691 (3d Cir. 1991) (stating that Section 17(a)(2) and Section 12 are criminal and civil analogues). Accordingly, as no loss causation defense existed under the pre-1995 version of Section 12 of the Securities Act, it does not exist under Section 17(a)(2) of the Securities Act or Section 12(G) of the Illinois Blue Sky Law. In sum, applying <u>Lucas</u> and finding no persuasive evidence to the contrary, this Court predicts that the Illinois Supreme Court would hold that a defendant may not assert affirmative defenses, including specifically a loss causation defense, under Section 12(G) of the Illinois Blue Sky Law.

Morgan Stanley analogizes Section 12(G) claims under the Illinois Blue Sky Law to Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. The argument proceeds as follows. Sections 12(F), 12(G), and 12(I) of the Illinois Blue Sky Law are modeled on Section 17(a) of the Securities Act. Section 17(a) provided the template for Rule 10b-5. And loss causation is an element of a Rule 10b-5 claim. Thus, Morgan Stanley concludes, loss causation is an affirmative defense to a Section 12(G) claim under the Illinois Blue Sky Law. Morgan Stanley's principal cited authority for this argument is <u>Platinum Partners Value Arbitrage Fund, Ltd. P'ship</u>

---

received thereon, upon the tender of such security, or for damages if he no longer owns the security." (Emphasis added.)

v. Chicago Bd. Options Exch., 976 N.E.2d 415, 422-25 (Ill. App. Ct. 1st Dist. 2012).

Morgan Stanley's analysis suffers from at least two defects. First, it finds no support in the clear language of Section 12(G). Second, its seemingly simple syllogism suffers from a fatal flaw. Not all of Section 17(a) can be read in pari materia with Rule 10b-5. Rule 10b-5 pertains to securities fraud actions, see Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341 (2005), but not all claims brought under Section 17(a) are fraud claims. Specifically, while Sections 17(a)(1) and 17(a)(3) sound in fraud, Section 17(a)(2) is written as a strict liability offense.[6] Thus a claim under Section 17(a)(2) is most analogous to the pre-1995 version of Section 12 of the Securities Act, which did not have a loss causation defense, as explained above. Accordingly, the syllogism must be reworked as follows. Section 12(G) of the Illinois Blue Sky Law was modeled on Section 17(a)(2) of the Securities Act. Section 17(a)(2) of the Securities Act should be read in pari materia with the pre-

---

[6] In a footnote, Morgan Stanley suggests that claims under Section 17(a)(2) of the Securities Act are the same as claims under Rule 10b-5(2), because the language of both provisions is materially identical. This suggestion ignores, however, that Rule 10b-5 is an SEC regulation implementing Section 10(b) of the Exchange Act, which is a fraud provision. See Dura Pharms., 544 U.S. at 341. As such, even though the language of the two provisions may be materially identical, Rule 10b-5(2) applies only to fraud, whereas Section 17(a)(2) contains no such restriction.

1995 version of Section 12 of the Securities Act, under which
there was no loss causation defense.  Therefore, there is no
loss causation defense under Section 12(G) of the Illinois Blue
Sky Law.

None of Morgan Stanley's cited authority adequately
responds to this crucial flaw in its argument.  To begin, in the
case on which Morgan Stanley relies most heavily, Platinum
Partners, the claim brought under Section 12(G) of the Illinois
Blue Sky Law had been abandoned.  976 N.E.2d at 423.  Thus, the
legal analysis in Platinum Partners pertains only to claims
under Sections 12(F) and 12(I) of the Illinois Blue Sky Law.
And because, as explained above, such claims sound in fraud, the
reasoning in Platinum Partners analogizing these claims to Rule
10b-5 claims is entirely consistent with the conclusions in this
Opinion.  Leaving aside Platinum Partners, virtually of the
remaining authority cited by Morgan Stanley refers to fraud
claims under Section 17(a) when analogizing to Rule 10b-5.  Not
a single citation stands for the proposition that a non-fraud
claim brought under Section 17(a)(2) must establish loss
causation.  This leaves only one authority cited by Morgan
Stanley to specifically analogize Section 12(G) of the Illinois
Blue Sky Law to Rule 10b-5.  It is a footnote from a 1975
Seventh Circuit opinion, Hidell v. Int'l Diversified Invs., 520
F.2d 529 (7th Cir. 1975), in which that court stated, "[b]oth

16

parties have assumed, and we agree, that § 12, subd. G of the Illinois Act should be interpreted identically with Rule 10b-5." Id. at 536 n.14 (citation omitted).  This is pure dictum, unexplained, and unsupported by the cited authorities, and it is therefore not persuasive authority to this Court.

Morgan Stanley makes three additional arguments, none of which is persuasive.  First, Morgan Stanley invokes a general principle that Illinois law should be interpreted to restrict liability, absent a statement by the Illinois Supreme Court to the contrary, citing Todd v. Societe Bic, S.A., 21 F.3d 1402, 1412 (7th Cir. 1994) (en banc).  This general principle about Illinois law, however, does not suggest that the Illinois Supreme Court would ignore the plain text of the statute to restrict liability.  Indeed, the Seventh Circuit limited this general observation by noting that a court must be presented with "an interpretation of Illinois law which reasonably restricts liability."  Id. (emphasis added).  The more apt general principle, in light of the statute's structure and language, is articulated by the Illinois Supreme Court: the Illinois Blue Sky Law is to be applied "liberal[ly]" to effectuate its "paternalistic" purpose of protecting the public. Benjamin v. Cablevision Programming Invs., 499 N.E.2d 1309, 1315 (Ill. 1986).

Second, Morgan Stanley argues that its causation defenses

should not be struck because they are valid for a "transaction causation" defense, which is available under the Illinois and Texas Blue Sky Laws.  Without reaching the question of the availability or scope of a transaction causation defense under either state's laws, this argument fails.  Morgan Stanley's causation defenses are phrased as challenging the set of circumstances giving rise to NCUA's "damages," "injuries," or "losses."  These are loss causation defenses -- not transaction causation defenses -- and Morgan Stanley may not amend its answer through this memorandum argument.

Third, Morgan Stanley contends that NCUA will suffer no prejudice from the retention of these defenses in its pleading because NCUA has put the facts at issue for these defenses into the case through certain allegations in its complaint.  To the contrary, permitting these defenses to remain may suggest to Morgan Stanley that it may pursue discovery into loss causation issues that are irrelevant to this case under the Illinois and Texas Blue Sky Laws.  The very real risk of such discovery and its attendant costs constitutes sufficient prejudice to grant the motion to strike.

## II. Non-Statutory Defenses

NCUA's motion to strike Defenses 17, 18, 19, 22, 24, and 29 is also granted.  As above, these non-statutory defenses are

insufficient under Rule 12(f), Fed.R.Civ.P., because such defenses do not exist under either Section 12(G) the Illinois Blue Sky Law or Section 33(A)(2) of the Texas Blue Sky Law. Accordingly, as above, there is no question of law or fact that would permit these defenses to succeed, and the possible cost of discovery related to these insufficient defenses constitutes sufficient prejudice to grant the motion to strike.

Non-statutory defenses do not exist under Section 12(G) of the Illinois Blue Sky Law. "The law in Illinois is clear in allowing only statutory, not equitable, defenses to be raised by a defendant in a case involving a blue sky violation." Gowdy v. Richter, 20 Ill. App. 3d 514, 525 (1st Dist. 1974). Notably, Morgan Stanley makes no argument in support of these defenses under Illinois law. Thus, these defenses are stricken with respect to NCUA's claims brought under Section 12(G) of the Illinois Blue Sky Law.

The same conclusion holds with respect to Section 33(A)(2) of the Texas Blue Sky Law. In Duperier, the Texas appellate court held that permitting non-statutory defenses under Section 33(A)(2) of the Texas Blue Sky Law would "obviate" the Texas legislature's decision to specify two affirmative defenses in the statute. In considering the specific non-statutory defense of comparative fault (Defense No. 17), it reasoned as follows:

The [plaintiff] responds that applying a comparative

19

> fault standard to [Section] 33A(2) would obviate the
> absolute defenses available to appellants under the
> article.  We agree.
>
> The statute excludes from liability any defendant who
> can prove the plaintiff knew the misrepresentations or
> the omissions or that the defendant did not and could
> not with reasonable care know the information.  Once
> proven, the defendant is entitled to absolute relief
> from liability.  Because the statute provides no other
> defenses, and a comparative fault defense would
> abrogate the effect of the statute, we hold the trial
> court did not err in refusing to submit a jury
> question on this issue.

Duperier, 28 S.W.3d at 753.  Accordingly, Texas courts have

either held or endorsed the conclusion that the affirmative

defenses of waiver (Defense No. 18), ratification (Defense No.

19), laches (Defense No. 22), estoppel (Defense No. 24), and

unclean hands (Defense No. 24) are unavailable under the Texas

Blue Sky Law.  See Aegis Ins. Holding Co. v. Gaiser, No. 04-05-

00938-CV, 2007 WL 906328, at *6 (Tex. App. Ct. San Antonio 2007)

(unclean hands)[7]; Duperier, 28 S.W.3d at 753 (waiver); Insurance

Co. of N.A. v. Morris, 928 S.W.2d 133, 154 (Tex. App. Ct.

Houston 1996), aff'd in part and rev'd in part on other grounds,

---

[7] Morgan Stanley cites Aegis in support of its position,
explained below, but it misreads the plain holding of that case.
In Aegis, the court rejected the defendant's unclean hands
defense, noting specifically that the defendant "cites no
authority that the common law defense of 'unclean hands' can be
used to defeat a claim for rescission under the [Texas Blue Sky
Law]."  2007 WL 906328, at *6.  To the extent that Aegis might
have suggested that the unclean hands defense was relevant to a
claim under Section 33(A)(2) of the Texas Blue Sky Law, this
suggestion is dictum, unsupported by the cited authority, and in
any event incorrect for reasons explained below.

981 S.W.2d 667 (Tex. 1998) (ratification and estoppel); Riggs v. Riggs, 322 S.W.2d 571, 574 (Tex. Ct. Civ. App. 1959) (laches). Based on the unambiguous statutory language, the persuasive reasoning in Duperier, and the consistent determination by Texas courts rejecting the availability of non-statutory defenses under the Texas Blue Sky Law, this Court predicts that the Texas Supreme Court would hold that non-statutory defenses are not available under Section 33(A)(2) of the Texas Blue Sky Law.

Morgan Stanley makes two principal arguments to oppose the motion to strike to non-statutory defenses, neither of which is persuasive. First, while conceding that non-statutory defenses cannot defeat liability under Section 33(A)(2) of the Texas Blue Sky Law, it argues that such defenses are still relevant here because they may be a factor to be considered in determining whether to grant rescission under the Texas Blue Sky Law. This is because, as Morgan Stanley argues, rescission is a remedy within the trial court's discretion.

Morgan Stanley's argument, while true as a general matter, fails when specifically applied to the circumstances here. Under the Texas Blue Sky Law, the trial court does not have discretion to choose between remedies. Specifically, while both rescission and damages are listed as available remedies to a violation under Section 33(A)(2) of the Texas Blue Sky Law, the provision dictates which remedy is to be applied. If the

plaintiff still possesses the security, the rescission remedy applies; if he does not, the damages remedy applies.  Tex. Rev. Civ. Stat. Ann. art. 581, §§ 33(A)(2), 33(D)(1) & (3); Geodyne Energy Income Prod. P'ship I-E v. Newton Corp., 97 S.W.3d 779, 785 (Tex. App. Ct. Dallas 2003) (reversing a lower court for applying the incorrect remedy under Section 33(A)(2) of the Texas Blue Sky Law), rev'd in part on other grounds, 161 S.W.3d 482 (Tex. 2005).  Morgan Stanley relies entirely on authority referring to statutory schemes in which the trial court has true discretion to choose the form of the remedy, including rescission.  That is not the circumstance here, and thus Morgan Stanley's cited authority is inapposite.

Second, Morgan Stanley repeats its argument that NCUA would suffer no prejudice from the retention of these non-statutory defenses because any discovery related to these defenses will overlap with discovery permitted by other unchallenged defenses. Morgan Stanley, however, relegates its entire explanation for how this might occur to footnotes.  Suffice it to say that, given the unavailability of the non-statutory defenses -- conceded as to the Illinois Blue Sky Law and weakly defended as to the Texas Blue Sky Law -- any discovery based on these defenses would unfairly prejudice the plaintiff.  That is sufficient to grant the motion to strike.

III. Remaining Defenses

NCUA's motion to strike Defense No. 30 is granted.  There is no authority that permits Morgan Stanley to incorporate the affirmative defenses in answers filed by defendants in other actions into its answer in this action.  Rule 10(c), Fed.R.Civ.P., on which Morgan Stanley relies, merely allows incorporation of pleadings in the same action, not the incorporation of pleadings in other actions.  See Charles Alan Wright & Arthur R. Miller, et al., 5A Fed. Prac. & Proc. Civ. § 1326 (3d ed. 2013) ("Although Rule 10(c) is not expressly limited to pleadings in the same action, it has been held that allegations in pleadings in another action, even if between the same parties, cannot be incorporated by reference.").

NCUA's motion to strike Defenses 1, 15, 25, and 28 is denied, however.  NCUA has not identified any prejudice from retention of Defenses No. 1 (failure to state a claim), No. 15 (contribution), No. 25 (standing), and No. 28 (necessary joinder).  Accordingly, the motion to strike these defenses is denied.

CONCLUSION

NCUA's March 18, 2014 motion to strike is granted in part. Defenses 7, 8, 9, 17, 18, 19, 21, 22, 24, 26, 29, and 30 are stricken from Morgan Stanley's February 25, 2014 answer.


Dated:    New York, New York
          April 28, 2014


_____
DENISE COTE
United States District Judge