**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as Liquidating
Agent of Southwest Corporate Federal Credit
Union and Members United Corporate Federal
Credit Union,

          *Plaintiff*,

    v.

MORGAN STANLEY & CO., INC. and
MORGAN STANLEY CAPITAL I INC.,

          *Defendants*.

No. 13 Civ. 6705 (DLC)

**ECF Case**

**Electronically Filed**

**Oral Argument Requested**

---

**MEMORANDUM OF LAW IN SUPPORT OF MORGAN STANLEY'S MOTION FOR
RECONSIDERATION OF MOTION TO DISMISS DECISION OR, IN THE
ALTERNATIVE, FOR CERTIFICATION OF INTERLOCUTORY APPEAL
PURSUANT TO 28 U.S.C. § 1292(b) AND FOR A STAY OF ALL PROCEEDINGS**

DAVIS POLK & WARDWELL LLP
James P. Rouhandeh
Paul S. Mishkin
Daniel J. Schwartz
Jane M. Morril
Scott Wilcox

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendants Morgan Stanley &
Co., Inc., n/k/a Morgan Stanley & Co. LLC,
and Morgan Stanley Capital I Inc.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ..................................................................................................................4

    I.     *CTS v. Waldburger* Requires Reconsideration of This Court's January 22
          Order ....................................................................................................................4

         A.     Standard of Review.................................................................................4

         B.     Background and the *CTS* Decision .........................................................5

         C.     *CTS* Demonstrates that the FCUA Extender Statute Does Not
             Expressly Preempt Statutes of Repose.....................................................7

         D.     *CTS* Rejects the Reasoning Underlying the Prior Extender Statute
             Decisions of This Court and the Second Circuit.....................................12

             1.     Rejected Textual Considerations ................................................12

             2.     Rejected Reliance on Statutory Purpose ......................................14

         E.     *CTS* Requires Reconsideration of This Court's Decision Regarding
             the Illinois Six-Month Notice Rule.........................................................16

    II.    At a Minimum, the Court Should Certify the Question of the FCUA's
          Preemptive Effect in Light of *CTS* to the Second Circuit.....................................19

         A.     Whether the FCUA Preempts State Statutes of Repose and State
             Notice Requirements Is a Controlling Question of Law...........................20

         B.     There Is Substantial Ground for Difference of Opinion ...........................21

         C.     Immediate Appeal Will Materially Advance the Litigation .....................22

    III.   The Court Should Stay All Proceedings Pending Interlocutory Appeal.............23

         A.     There Is a Strong Showing of Likelihood of Success on the Merits ........24

         B.     Morgan Stanley Will Suffer Irreparable Injury Absent a Stay ................24

         C.     NCUA and the Public Will Benefit from a Stay of Proceedings..............25

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

### CASES

PAGE

*Bond v United States*,
    134 S. Ct. 2077 (June 2, 2014)............................................................................ 15

*Buehl v. Dayson*,
    469 N.E.2d 403 (Ill. App. Ct. 1984) .................................................................. 19

*Chamber of Comm. of the U.S. v. Whiting*,
    131 S. Ct. 1968 (2011)......................................................................................... 7

*Clinton v. Brown & Williamson Holdings, Inc.*,
    652 F. Supp. 2d 529 (S.D.N.Y. 2009)................................................................. 4

*CTS Corp. v. Dynamics Corp. of Am.*,
    481 U.S. 69 (1987)............................................................................................. 12

*CTS Corp. v. Waldburger*,
    134 S. Ct. 2175 (June 9, 2014)................................................................... *passim*

*Estate of Joseph Re v. Kornstein Veisz & Wexler*,
    No. 94 Civ. 2369 (S.D.N.Y. Sept. 23 and 24, 1997) ........................................ 25

*Fed. Housing Fin. Agency v. UBS Americas, Inc.*,
    712 F.3d 136 (2d Cir. 2013)....................................................................... *passim*

*FTC v. Phoebe Putney Health Sys., Inc.*,
    133 S. Ct. 1003 (2013)....................................................................................... 15

*Goodyear Atomic Corp. v. Miller*,
    486 U.S. 174 (1988)............................................................................................. 8

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007)................................................................................. 24

*Greenwood v. Fenn*,
    26 N.E. 487 (Ill. 1891)....................................................................................... 21

*In re Air Crash off Long Island, N.Y., on July 17, 1996*,
    27 F. Supp. 2d 431 (S.D.N.Y. 1998).................................................................. 21

*In re Duplan Corp.*,
  591 F.2d 139 (2d Cir. 1978)................................................................... 20

*In re Lloyd's Am. Trust Fund Litig.*,
  No. 96 Civ. 1262 (RWS), 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997)................................ 21

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
  725 F.3d 65 (2d Cir. 2013)................................................................... 16

*In re S. African Apartheid Litig.*,
  No. 02 MDL 1499 (SAS), 2014 WL 1569423 (S.D.N.Y. Apr. 17, 2014)............................... 4

*Lawrence v. Chater*,
  516 U.S. 163 (1996).......................................................................... 22

*LNC Invs., Inc. v. First Fid. Bank N.A.*,
  No. 92 Civ. 7584 (CSH), 2000 WL 461612 (S.D.N.Y. Apr. 18, 2000) .............................. 20

*M.E.H. v. L.H.*,
  685 N.E.2d 335 (Ill. 1997).................................................................... 5

*Mohammed v. Reno*,
  309 F.3d 95 (2d Cir. 2002).................................................................. 24

*Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*,
  727 F.3d 1246 (10th Cir. 2013) ............................................................... 7

*Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*,
  Nos. 12-3295, 12-3298 (10th Cir. July 12, 2013) ............................................. 6

*Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*,
  No. 12-3295 (10th Cir. June 18, 2014) ....................................................... 7

*Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*,
  Dkt. No. 207, No. 2:11-2340-JWL-JPO (D. Kan. Apr. 29, 2013)................................ 23

*Nken v. Holder*,
  556 U.S. 418 (2009).......................................................................... 23

*Nomura Home Equity Loan v. Nat'l Credit Union Admin.*,
  No. 13-576, 2014 WL 2675836 (June 16, 2014) ............................... 2, 6, 7, 21, 22, 24

*Palmore v. United States*,
  411 U.S. 389 (1973).......................................................................... 12

*Philip Morris USA, Inc. v. Scott,*
    131 S. Ct. 1 (2010) (Scalia, J., in chambers) ............................................................ 24

*Sutherland v. Ernst & Young LLP,*
    856 F. Supp. 2d 638 (S.D.N.Y. 2012) ................................................................... 23, 25

*Thapa v. Gonzales,*
    460 F.3d 323 (2d Cir. 2006) ..................................................................................... 23

*Vazquez-Valentin v. Santiago-Diaz,*
    459 F.3d 144 (1st Cir. 2006) .................................................................................... 22

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,*
    956 F.2d 1245 (2d Cir. 1992) ..................................................................................... 4

*Wellons v. Hall,*
    558 U.S. 220 (2010) ..................................................................................... 2, 22, 24

*Wyeth v. Levine,*
    555 U.S. 555 (2009) ..................................................................................... 17, 18, 19

*Yamaha Motor Corp., U.S.A. v. Calhoun,*
    516 U.S. 199 (1996) ................................................................................................ 20

STATUTES & RULES

12 U.S.C. § 1787(b)(14) ................................................................................... *passim*

12 U.S.C. § 1787(b)(16) ........................................................................................ 18

12 U.S.C. § 4617(b)(12) ..................................................................................... 6, 13

28 U.S.C. § 1292(b) ............................................................................... 1, 20, 21, 25

42 U.S.C. § 9658 ................................................................................... 6, 10, 11, 13

815 Ill. Comp. Stat. Ann. 5/13(B) ..................................................................... 16, 19

815 Ill. Comp. Stat. Ann. 5/13(D)(2) ...................................................................... 5

Fed. R. Civ. P. 54(b) ............................................................................................ 1, 4

Tex. Rev. Civ. Stat. Ann. art. 581, § 33(H)(3)(a) ..................................................... 5

OTHER AUTHORITIES

131 Cong. Rec. S217 (Jan. 3, 1985) ................................................................. 8

131 Cong. Rec. S10288 (July 29, 1985) ........................................................... 8

132 Cong. Rec. S13235 (Sept. 22, 1986) .......................................................... 8

132 Cong. Rec. S9670 (May 6, 1986) ............................................................... 8

132 Cong. Rec. S10304 (May 12, 1986) ........................................................... 8

132 Cong. Rec. S25102 (Sept. 22, 1986) .......................................................... 8

133 Cong. Rec. S7878 (Apr. 2, 1987) ............................................................... 8

134 Cong. Rec. S28337 (Oct. 5, 1988) ............................................................. 8

135 Cong. Rec. E2243 (June 21, 1989) ............................................................. 8

*Black's Law Dictionary* (9th ed. 2009) .......................................................... 19

Defendants Morgan Stanley & Co., Inc. and Morgan Stanley Capital I Inc. (collectively, "Morgan Stanley") respectfully submit this memorandum of law in support of their motion to reconsider that portion of the Court's January 22, 2014 Opinion and Order (Dkt. No. 54) (the "January 22 Order") that denied Morgan Stanley's motion to dismiss as to Plaintiff National Credit Union Administration Board ("NCUA")'s state law claims, pursuant to Federal Rule of Civil Procedure 54(b) and the Court's inherent power to reconsider its prior decisions before final judgment, or, in the alternative, to certify for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and to stay all proceedings pending the appeal.

## PRELIMINARY STATEMENT

NCUA's state law claims – the only claims remaining in this action – are barred by the relevant statutes of repose unless those repose periods are preempted by the "Extender Statute" provision of the Federal Credit Union Act (the "FCUA"). This Court's January 22 Order found that the FCUA Extender Statute preempts both statutes of limitation and statutes of repose, in reliance on the Second Circuit's opinion in *Federal Housing Finance Agency* ("*FHFA*") *v. UBS Americas, Inc.*, 712 F.3d 136 (2d Cir. 2013). This Court also held that the FCUA Extender Statute impliedly preempts a "six-month notice" requirement under Illinois law based on the doctrine of obstacle preemption. The viability of NCUA's remaining claims turns on these holdings.

Neither the January 22 Order nor the Second Circuit's *FHFA* opinion can stand in light of the Supreme Court's recent decision in *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (June 9, 2014). In *CTS*, the Supreme Court addressed a provision of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), which, like the FCUA Extender Statute, extends the "statute of limitations" for certain state law claims. In a 7-2 decision, the Supreme Court held that this preemption provision does *not* apply to statutes of

repose. *Id.* at 2182.  The Supreme Court also deemed the CERCLA preemption provision sufficiently analogous to the FCUA Extender Statute to warrant vacating and remanding for reconsideration the Tenth Circuit's decision in *NCUA v. Nomura Home Equity Loan, Inc.*, which had interpreted the FCUA Extender Statute to preempt statutes of repose – the same interpretation adopted by this Court.  *Nomura Home Equity Loan v. NCUA*, No. 13-576, 2014 WL 2675836, at *1 (June 16, 2014).  The Supreme Court's decision to grant the *Nomura* petition for certiorari and simultaneously to vacate and remand the underlying decision (*i.e.*, to "GVR" the petition) reflects, in the view of the Supreme Court, a "reasonable probability" that the Tenth Circuit's decision, and therefore this Court's January 22 Order on the same issue, "rest[] upon a premise that the lower court would reject if given the opportunity for further consideration." *Wellons v. Hall*, 558 U.S. 220, 225 (2010).

*CTS* indeed compels reversal of this Court's decision.  The basic holding of *CTS* is that there can be no preemption of statutes of repose absent a clear expression in the *text* of the relevant extender provision that Congress intended to extend or eliminate repose periods.  Where, as here, the extender provision refers only to statutes of limitations without any express reference to an extension or elimination of statutes of repose, and where the overall structure and language of the provision reinforce that it relates exclusively to statutes of limitations, the repose periods remain unaltered.  As explained in detail in *CTS*, the textual analysis is significantly informed by the fundamental differences between statutes of limitations and statutes of repose: the former are focused on claim "accrual," which relates to the timing of plaintiff's ability to bring suit, and the latter are focused on the substantive right of defendants to be free from liability after a fixed period of time.  Given this and other differences, an intent to displace the former does not imply an intent to displace the latter.  Moreover, it is expressly *not* a valid

analysis under *CTS* that a statute's purported remedial purpose might be served by eliminating statutes of repose.  The extender provision must actually address statutes of repose and indicate that they are preempted.  Furthermore, *CTS* flatly rejects the application of implied or "obstacle"-based preemption in such circumstances.

The Second Circuit's *FHFA* decision and this Court's decision were based on fundamentally contrary principles and therefore cannot stand.  Both decisions fail to address various textual features highlighted by *CTS* demonstrating that the FCUA Extender Statute does *not* refer to statutes of repose, including the provision's focus on claim "accrual," which has no meaning or relevance to statutes of repose.  Both decisions incorrectly rely on the fact that the phrase "statute of limitations" has historically, in certain circumstances, been interpreted to include statutes of repose.  Neither decision identifies any explicit reference or other affirmative indication in the text of the FCUA Extender Statute that the phrase "statute of limitations" actually *does* refer to statutes of repose in this context.  Both decisions also rely on the purported remedial purpose of the FCUA to conclude that Congress must have intended to displace statutes of repose, notwithstanding the failure to make that intention clear in the text of the provision itself.  All of this is contrary to *CTS*.  For these reasons, and as additionally explained below, *CTS* requires reversal of the Court's January 22 Order.

At a minimum, and even if the Court concludes that its ruling should stand for now, the issues raised by *CTS* are substantial and consequential enough to satisfy overwhelmingly the requirements for interlocutory appeal.  Whether *CTS* compels dismissal of NCUA's claims presents – if nothing else – an issue as to which there is "substantial ground for difference of opinion" and which, if resolved in Morgan Stanley's favor, would end this case, as well as numerous other cases pending before this Court.  Notably, even before the Supreme Court's

decision in *CTS*, this Court deemed the analogous HERA Extender Statute issue in *FHFA* sufficiently uncertain and consequential to warrant interlocutory appeal.  The current context presents an equally or more compelling case for certification.

If the Court certifies its prior decision for interlocutory appeal, the Court should stay all proceedings while the appeal is pending.  As the Court is aware, massive discovery efforts are currently underway and significant resources are being expended on an ongoing basis.  If the Second Circuit were to reverse this Court's prior decision regarding the FCUA Extender Statute in light of *CTS*, there would be substantial and unnecessary expenditure of resources by the parties and third parties absent a stay.

## ARGUMENT

### I.   *CTS v. Waldburger* Requires Reconsideration of This Court's January 22 Order

#### A.   Standard of Review

Federal Rule of Civil Procedure 54(b) provides that any decision "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a [final] judgment."  A court has "authority under [Rule] 54(b), as well as the inherent power of the court, to reconsider a prior decision at any time before . . . final judgment."  *Clinton v. Brown & Williamson Holdings, Inc.*, 652 F. Supp. 2d 529, 530 (S.D.N.Y. 2009) (citation omitted).  An "intervening change of controlling law" – such as provided by the Supreme Court's decision in *CTS* – is a quintessential basis for reconsideration.  *See, e.g.*, *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

Although district courts are bound by Second Circuit precedent that remains good law, they are not bound by Second Circuit precedent that has been "expressly or implicitly overruled by the Supreme Court."  *In re S. African Apartheid Litig.*, No. 02 MDL 1499 (SAS), 2014 WL 1569423, at *4 (S.D.N.Y. Apr. 17, 2014) (citation omitted).  Thus, to the extent the Court views

the Second Circuit's decision in *FHFA* as controlling on the question of the FCUA Extender

Statute, the Court need not await a further ruling by the Second Circuit before reconsidering its

prior decision in light of *CTS*.

> **B.     Background and the *CTS* Decision**

NCUA asserts claims on behalf of Southwest Corporate Federal Credit Union under the

Texas Securities Act, and Members United Corporate Federal Credit Union ("Members United")

under the Illinois Securities Law (the "ISL").  These claims are subject to five-year statutes of

repose, which run from the date of sale of the security.  Tex. Rev. Civ. Stat. Ann. art. 581,

§ 33(H)(3)(a); 815 Ill. Comp. Stat. Ann. 5/13(D)(2).  Because all of NCUA's claims were filed

over six years after the sale of the securities at issue, all are barred under state law.[1]

The Court's January 22 Order held that the Extender Statute provision of the FCUA

extends state statutes of repose, even though the provision refers only to the applicable "statute

of limitations."  January 22 Order at 17; *see* 12 U.S.C. § 1787(b)(14) (Appendix 1).[2]  Based on

this interpretation, the Court rejected Morgan Stanley's argument that NCUA's state law claims

should be dismissed under the applicable statutes of repose.  January 22 Order at 47.  The

Court's holding was based largely on the Second Circuit's opinion in *FHFA*, 712 F.3d 136,

which addressed the analogous provision in the Housing and Economic Recovery Act of 2008

---

[1] Although it did not impact the Court's decision given the ruling that state statutes of repose are preempted
by the FCUA Extender Statute, the Court's January 22 Order stated in dictum that "only a three-year statute of
limitations is operative" under Illinois law because "this case was filed after" the Illinois legislature repealed the
ISL's statute of repose in August 2013.  January 22 Order at 21.  The Illinois Supreme Court has, however, held that
it would violate due process under the state constitution to revive claims that, as here, were already barred by the
statute of repose.  *See M.E.H. v. L.H.*, 685 N.E.2d 335, 339-40 (Ill. 1997) ("[R]epeal of the statutory repose period
could not operate to revive plaintiff['s] claims.  If the claims were time-barred under the old law, they remained
time-barred even after the repose period was abolished by the legislature," as the right to repose "cannot be taken
away by the legislature without offending the due process protections of our state's constitution.").

[2] The Extender Statute provision of the FCUA was added through amendments introduced by the Financial
Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").

("HERA") that extends the statute of limitations on certain claims by the Federal Housing Finance Agency ("FHFA").  January 22 Order at 12-17; *see* 12 U.S.C. § 4617(b)(12).

In *CTS*, the Supreme Court reviewed a similar provision in the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), which extends state statutes of limitations for persons claiming injuries arising from the release of a hazardous substance, pollutant, or contaminant into the environment.  42 U.S.C. § 9658 (Appendix 2); 134 S. Ct. at 2180.  Congress, "out of concern for long latency periods" before a person exposed to a toxic substance shows symptoms of resulting injury, created in § 9658 a "discovery rule" that "pre-empts state statutes of limitations that are in conflict with its terms."  *CTS*, 134 S. Ct. at 2180.  The question presented in *CTS* was "whether § 9658 also pre-empts state statutes of repose."  *Id.*  The Fourth Circuit had held that it did, and NCUA cited that decision as relevant to the scope of preemption under the FCUA Extender Statute, arguing that the decision was "directly contrary to [Defendants'] contention that the phrase 'statute of limitations,' by its plain meaning, excludes . . . 'statute[s] of repose.'"  Rule 28(j) Letter, *NCUA v. Nomura Home Equity Loan, Inc.*, Nos. 12-3295, 12-3298 (10th Cir. July 12, 2013).

The Supreme Court reversed the Fourth Circuit, holding that "the natural reading of § 9658's text is that statutes of repose are excluded."  *CTS*, 134 S. Ct. at 2188 (opinion of Kennedy, J.).  The Court explained that, although statutes of limitations and statutes of repose are both "used to limit the temporal extent or duration of liability for tortious acts," the "time periods specified are measured from different points, . . . the statutes seek to attain different purposes and objectives[, and CERCLA] mandates a distinction between the two."  *Id.* at 2182.

After *CTS* was decided, the Supreme Court considered at its next conference a petition for certiorari brought by a group of defendants in NCUA's actions filed in Kansas.  *See* Docket,

*Nomura*, No. 13-576 (June 9, 2014).  The Supreme Court had deferred decision on the petition

for four months until the *CTS* decision.  *See id.*  A week after it decided *CTS*, the Supreme Court

granted the petition, vacated the Tenth Circuit's judgment in *NCUA v. Nomura Home Equity*

*Loan, Inc.*, 727 F.3d 1246 (10th Cir. 2013), and remanded to the Tenth Circuit for "further

consideration in light of [*CTS*]."  *Nomura*, 2014 WL 2675836, at *1.  The Tenth Circuit's

*Nomura* opinion, citing the Second Circuit's opinion in *FHFA* with approval, had held that the

FCUA Extender Statute preempts state statutes of repose – the same ruling reached by the Court

in this case.  *Nomura*, 727 F.3d at 1257-58.  Following the Supreme Court's GVR order, the

Tenth Circuit ordered supplemental briefing on the issue, which is due on July 11, 2014.  *See*

*Nomura*, No. 12-3295 (10th Cir. June 18, 2014).

### C.    *CTS* Demonstrates that the FCUA Extender Statute Does Not Expressly Preempt Statutes of Repose

To rely on express preemption, the Court must find that the plain text of the FCUA

Extender Statute displaces state statutes of repose.  *See Chamber of Commerce of the U.S. v.*

*Whiting*, 131 S. Ct. 1968, 1977 (2011) ("When a federal law contains an express preemption

clause, we focus on the plain wording of the clause, which necessarily contains the best evidence

of Congress' preemptive intent." (internal quotation marks omitted)).  Applied here, this would

have to mean that, by establishing "the applicable statute of limitations" for actions brought by

NCUA, the FCUA Extender Statute expressly extends or eliminates state statutes of repose.  As

set forth below, in light of the considerations identified by the Supreme Court in *CTS*, that

interpretation cannot be squared with the text of the statute.

*First*, the FCUA, like CERCLA, refers exclusively and repeatedly to a "statute of

limitations."  *CTS*, 134 S. Ct. at 2185; *see* 12 U.S.C. § 1787(b)(14).  It nowhere refers to a statue

of repose.  *Id.*  Under *CTS*, the fact that Congress did not refer to a statute of repose is

"instructive," particularly because, as of 1986, when the CERCLA extender provision was enacted, Congress was already plainly aware of the "clear distinction between" statutes of limitations and repose.  *See CTS*, 134 S. Ct. at 2186; *see also Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988) (holding a general presumption exists that "Congress is knowledgeable about existing law pertinent to the legislation it enacts").  Given that the FCUA Extender Statute was enacted three years *after* the statute at issue in *CTS – i.e.*, at least three years after Congress plainly had appreciated the distinction between statutes of limitations and statutes of repose – it follows that Congress' decision to refer only to statutes of limitations in the FCUA Extender Statute means what it says.  *See CTS*, 134 S. Ct. at 2186.[3]

*Second*, the FCUA Extender Statute's repeated references to the date "*the claim accrues*" demonstrate that it addresses only statutes of limitations and not statutes of repose.  *See* 12 U.S.C. § 1787(b)(14)(A), (B) (emphasis added); *CTS*, 134 S. Ct. at 2187.  As the Supreme Court

---

[3] Indeed, between 1985 and 1989, when Congress adopted the FCUA Extender Statute, legislative history reflects that Congress – including the Senator who sponsored FIRREA – expressly distinguished between statutes of limitation and statutes of repose on numerous occasions, including in the text of several proposed enactments. *See, e.g.*, 135 Cong. Rec. E2243, E2243 (June 21, 1989) (statement of Rep. Luken) (Product Liability Reform Act attempted to "establish[] an outer limit of 25 years, called a *statute of repose*" on certain torts arising from industrial accidents (emphasis added)); 134 Cong. Rec. S28337, S28352 (Oct. 5, 1988) (statement of Sen. McCain) (regarding the General Aviation Accident Liability Standards Act, "I do not think it is unreasonable to establish a 2-year statute of limitations and a 20-year *statute of repose*" (emphasis added)); 133 Cong. Rec. S7878, S7879 (Apr. 2, 1987) (regarding a product liability bill, "Bill . . . establishes a 2-year statute of limitations and a 10-year *statute of repose*" (emphasis added)); 132 Cong. Rec. S25102, S25113 (Sept. 22, 1986) (statement of Sen. McConnell) (regarding the Tort Litigation Reform Act, "[t]his amendment also adopts in full the uniform time limitations dealing with statutes of limitation, *statutes of repose* and useful safe life periods" (emphasis added)); 132 Cong. Rec. S13235 (Sept. 22, 1986) (statement of Sen. Kasten, on behalf of Sens. Inouye, Gorton, Kassebaum, Stevens, and Riegle) (stating amendment to product liability bill establishes a "*statute of repose* [that] will end the 'long table of liability' problem" (emphasis added)); 132 Cong. Rec. S10304, S10309-10 (May 12, 1986) (Section 308(a) of the Product Liability Voluntary Claims and Uniform Standards Act, Danforth Amendment No. 1951, titled "Uniform Standards of Limitation *and Repose*," and described as providing "a uniform statute of limitations that runs for 2 years . . . and . . . a 25-year *statute of repose*" (emphasis added)); 132 Cong. Rec. S9670, S9672 (May 6, 1986) (regarding the Uniform Product Liability Law, Kassenbaum Amendment No. 1823, "[t]he bill . . . establishes a 12-year *statute of repose* and a 2-year statute of limitations" (emphasis added)); 131 Cong. Rec. S10288 (July 29, 1985) (statement of Sen. Mathias) (referring to the "Cultural Property *Repose* Act," for which "a 10-year *repose* would apply" (emphasis added)); 131 Cong. Rec. S217 (Jan. 3, 1985) (discussing, in Section 17(d)(2)(B) of the Product Liability Act, "the nature and scope of substantive, procedural and evidentiary barriers  . . . including statutes of limitation and *statutes of repose*" (emphasis added)).

explained in *CTS*, although statutes of limitations and repose "both are mechanisms used to limit the temporal extent or duration of liability for tortious acts," they are "measured from different points," and each has a "distinct purpose and each is targeted at a different actor." *CTS*, 134 S. Ct. at 2182-83.  A statute of limitations "begins to run when the cause of action 'accrues' – that is, when the plaintiff can file suit and obtain relief." *Id.* at 2182 (internal quotation marks and citation omitted).  By contrast, a statute of repose is "measured *not* from the date on which *the claim accrues* but instead from the date of the last culpable act or omission of the defendant," and is "*not* related to *the accrual of any cause of action*." *Id.* (emphasis added).

Congress expressly tied "the applicable statute of limitations" in the FCUA Extender Statute to when a claim "accrues."  In a subsection titled "Determination of the date on which a claim accrues," the FCUA Extender Statute defines that accrual date as the later of the date on which "the cause of action accrues" and the date of NCUA's appointment as conservator or liquidating agent.[4]  It then provides that "the applicable statute of limitations" is a three- or six-year period from "the date on which the claim accrues," if that period is longer than the period applicable under state law.  12 U.S.C. § 1787(b)(14).  Under *CTS*, this language demonstrates that the "applicable statute of limitations" only refers to a statute of limitations and not to a statute of repose.  The former begins to run when a claim accrues, while the latter does not.  *CTS*, 134 S. Ct. at 2182.

Indeed, interpreting the "applicable statute of limitations" to refer to a statute of repose would be even more inconsistent with the statutory text than in the CERCLA context.  CERCLA, unlike the FCUA, references only the "commencement" of a statute of limitations, not its

---

[4] The conservatorship date is akin to an accrual date because it is the first date that NCUA can potentially "file suit and obtain relief" on behalf of a credit union.  *See CTS*, 134 S. Ct. at 2182 (stating a claim "accrues" when the plaintiff "can file suit and obtain relief" (citation omitted)).

accrual, 42 U.S.C. § 9658(a)(1), and defines the "applicable limitations period" as the period during which a "civil action . . . may be brought," which "is true in a literal sense [of] a statute of repose" as well, *id.* § 9658(b)(2).  *CTS*, 134 S. Ct. at 2187.  The Supreme Court inferred from this construction that CERCLA was focused on claim accrual, *see id.*, but no such inferential leap is required here: the FCUA Extender Statute *expressly* defines the "applicable statute of limitations" as a period running from the date "the claim accrues."  12 U.S.C. § 1787(b)(14)(A)(i)(I), (ii)(I).  Under *CTS*, this is a sufficient textual indication that the FCUA Extender Statute does not preempt statutes of repose.

Moreover, the general structure of the FCUA Extender Statute and its overall reliance on an accrual concept is inconsistent with an intention to displace statutes of repose.  The "statute of limitations" as defined by the FCUA Extender Statute *never* begins to run unless the cause of action has accrued.  *See* 12 U.S.C. § 1787(b)(14)(B) (statute of limitations begins to run on the *later* of accrual date and date of conservatorship).  By applying only to accrued claims, the FCUA Extender Statute thus "presupposes that a [covered] civil action exists."  *CTS*, 134 S. Ct. at 2187 (internal quotation marks and citation omitted).  A statute of repose, by contrast, "mandates that there shall be no cause of action beyond a certain point, even if no cause of action has yet accrued," and thus "can prohibit a cause of action from coming into existence."  *Id.*; *see also id.* ("A statute of repose can be said to define the scope of the cause of action.").  Thus, the FCUA Extender Statute effectively carves out the operation of statutes of repose by applying only if "the cause of action accrues," and not if a statute of repose "prohibit[s] a cause of action from coming into existence."  *See* 12 U.S.C. § 1787(b)(14)(B); *CTS*, 134 S. Ct. at 2187.  Accordingly, as in *CTS*, "[i]n light of the distinct purpose for statutes of repose" to "preclude an alleged tortfeasor's liability before a plaintiff is entitled to sue, before an actionable harm even

occurs," the "definition of 'applicable [statute of limitations]' . . . is best read to encompass only statutes of limitations."  *CTS*, 134 S. Ct. at 2187.

*Third*, the FCUA Extender Statute exclusively refers to the applicable statute of limitations in the *singular*.  In *CTS*, the Supreme Court concluded that "language describing the covered period in the singular" indicates that the statute refers only to a single limitations period rather than to both a limitations *and* a repose period.  *Id.* at 2186-87 ("The statute uses the terms 'the applicable limitations period,' 'such period shall commence,' and 'the statute of limitations established under State law.'").  The Supreme Court explained that references to a single statute of limitations, consisting of a single period beginning on a single date, would be "an awkward way to mandate the pre-emption of two different time periods with two different purposes."  *Id.* at 2187.  Like CERCLA, the FCUA Extender Statute does not refer to "two different time periods," but rather to "*the* applicable *statute* of limitations," which begins on "*the date* on which *the statute* of limitation begins to run," and extends only "*the period* applicable under State law," in the singular.  12 U.S.C. § 1787(b)(14)(A), (B) (emphasis added).  If the FCUA Extender Statute only creates one limitations period that extends only one state limitations period, then it must apply only to statutes of limitations.

*Fourth*, other provisions of the FCUA use the identical term "the applicable statute of limitations" to refer to limitations periods that are subject to tolling.[5]  In *CTS*, the Supreme Court held that the presence of tolling is "[a]nother and altogether unambiguous textual indication that § 9658 does not pre-empt statutes of repose," because "a repose period . . . will not be delayed by estoppel or tolling."  *CTS*, 134 S. Ct. at 2187 (internal quotation marks omitted).  Because

---

[5] *See* 12 U.S.C. § 1787(b)(5)(F)(i), (b)(8)(E) (provisions titled "Statute of limitation tolled," which provide that, "[f]or purposes of any applicable statute of limitations, the filing of a claim with the liquidating agent" tolls the statute of limitations by being deemed to be a commencement of an action even if no suit has yet been filed).

"identical words and phrases within the same statute should normally be given the same meaning," *Hall v. United States*, 132 S. Ct. 1882, 1891 (2012) (internal quotation marks omitted), the FCUA's use elsewhere of the phrase "the applicable statute of limitations" to refer exclusively to a statute of limitations, as evidenced by a tolling provision, indicates that the same phrase refers exclusively to statutes of limitations when used in the FCUA Extender Statute.

In short, reading the term "applicable statute of limitations" in the FCUA's extender provision to displace statutes of repose yields multiple textual inconsistencies and anomalies of the very same type relied upon by the Supreme Court in *CTS*. By contrast, reading "applicable statute of limitations" to refer only to a statute of limitations results in a coherent interpretation of the entire statutory text. Had Congress intended to alter or eliminate any applicable statute of repose and the accompanying substantive right it confers on defendants to be free from liability, it would have said so plainly, not obliquely and in a manner that renders the statutory text self-contradictory. *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 86 (1987) ("The longstanding prevalence of state regulation in this area suggests that, if Congress had intended to pre-empt . . . it would have said so explicitly.").[6] Thus, as in *CTS*, "the natural reading" of the text "is that statutes of repose are excluded." *CTS*, 134 S. Ct. at 2188.

### D.    *CTS* **Rejects the Reasoning Underlying the Prior Extender Statute Decisions of This Court and the Second Circuit**

#### 1.    **Rejected Textual Considerations**

In ruling that the relevant extender provisions displace statutes of repose, this Court and the Second Circuit relied on textual considerations that, under *CTS*, support the opposite conclusion. For example, this Court and the Second Circuit rested their holdings in large part on

---

[6] *See also Palmore v. United States*, 411 U.S. 389, 395 (1973) (noting that courts "are entitled to assume that in amending [a statute], Congress legislated with care, and that had Congress intended" the suggested interpretation, "it would have said so expressly, and not left the matter to mere implication").

the following two textual features of the relevant provisions:  (1) their prescription of what "*the applicable statute of limitations . . . shall be*," and (2) their application to "*any* action" brought by FHFA or NCUA.  *FHFA,* 712 F.3d at 141-42 (emphasis in original) (quoting 12 U.S.C. § 4617(b)(12)); January 22 Order at 13 (quoting 12 U.S.C. § 1787(b)(14)(A)).  This Court and the Second Circuit also relied on the observation that courts and Congress have not always distinguished in their terminology between "statutes of limitations" and "statutes of repose," and that usage of the former term does not necessarily preclude reference to the latter.  *FHFA,* 712 F.3d at 142-43; January 22 Order at 14-15.

Based on the reasoning of *CTS* discussed above, these textual considerations fail to support the prior holdings and, indeed, directly undercut them.  Under *CTS*, references to what "*the* applicable statute of limitations . . . shall be," defined as a single period running from the accrual date or "*the* period applicable under State law," as well as other references to a single time period, undercut the notion that two separate time periods are preempted.  *See* 12 U.S.C. § 1787(b)(14)(A) (emphasis added); *CTS*, 134 S. Ct. at 2187.

Moreover, in light of *CTS*, application of the FCUA Extender Statute to "any action" also weighs against preemption of statutes of repose.  As with HERA and the FCUA, CERCLA's extender provision also applies "[i]n the case of *any* action" covered by its terms.  42 U.S.C. § 9658(a)(1) (emphasis added); *accord* 12 U.S.C. §§ 1787(b)(14)(A), 4617(b)(12).  Indeed, the plaintiffs in *CTS* emphasized this very point in their Supreme Court briefing.  *See* Brief for Respondents at 20-21, *CTS*, 134 S. Ct. 2175 (No. 13-339) (stating CERCLA "applies broadly" to "'any action' in which the state 'limitations period' would provide a 'commencement date' that is 'earlier than the federally required commencement date'" (quoting 42 U.S.C. § 9658(a)(1))).  Yet *CTS* does not read this language to imply, let alone conclude, that CERCLA alters statutes of

repose. To the contrary, as discussed above, the FCUA Extender Statute, like CERCLA, presupposes that a cause of action *exists*, which may not be the case when applying the extender provision to a statute of repose. *See CTS*, 134 S. Ct. at 2187.

Nor is the Second Circuit's observation that courts and Congress have on occasion used the term "statute of limitations" to refer to "statutes of repose," *FHFA*, 712 F.3d at 142-43, of any moment. As discussed above, the Supreme Court rejected this same argument in *CTS* because, by at least 1986, when CERCLA was enacted, Congress was made aware of the "clear distinction between the two" terms. *CTS*, 134 S. Ct. at 2186. It follows from that – as well as the intervening legislative history, *see* note 4 *supra* – that Congress continued to appreciate the distinction when it adopted the extender provision amending the FCUA three years later in 1989. Moreover, the hypothetical possibility that the phrase "statute of limitations" *could* in some contexts refer to a "statute of repose" does not establish that it does so in the context of the FCUA Extender Statute. As discussed above, the textual evidence indicates that it does not.

### 2.    Rejected Reliance on Statutory Purpose

*CTS* also rejects reliance on statutory purpose as a basis for inferring preemption of statutes of repose to the extent not supported by the statutory text, further undercutting the Second Circuit's decision in *FHFA*, which relied on perceived statutory purpose "[t]o the extent there is any ambiguity in the words of the extender statute." *FHFA*, 712 F.3d at 142. For example, the Second Circuit described HERA as intending to provide "time to investigate and develop potential claims," and reasoned that a broad interpretation of the term "statute of limitations" that encompassed statutes of repose would further that remedial purpose. *Id.* This Court also found that the FCUA Extender Statute shares a similar remedial purpose, and that this similarity supported application of the Second Circuit's holding to the FCUA Extender Statute as well. January 22 Order at 16.

14

The Supreme Court, however, expressly rejected the proposition that extender statutes should be interpreted liberally in light of their perceived remedial purpose. *CTS*, 134 S. Ct. at 2185. In *CTS*, plaintiffs argued that the CERCLA extender statute should be interpreted to preempt statutes of repose to fulfill its purpose of "help[ing] plaintiffs bring tort actions for harm caused by toxic contaminants." *Id.* at 2188. The Supreme Court rejected this argument, concluding that plaintiffs were reading the statutory intent at too high a "level of generality," and that – absent specific textual support – it was improper to interpret the statute as encompassing a particular meaning simply because that interpretation would arguably further the broadly-articulated purpose. *Id.* As the Supreme Court emphasized, "no legislation pursues its purposes at all costs," *id.* at 2185 (citation omitted), and it further noted that "were the Court to adopt a presumption to help resolve ambiguity, substantial support also exists for the proposition that 'the States' coordinate role in government counsels against reading' federal laws . . . 'to restrict the States' sovereign capacity to regulate' in areas of traditional state concern." *Id.* (quoting *FTC v. Phoebe Putney Health Sys., Inc.*, 133 S. Ct. 1003, 1010 (2013)); *see also Bond v United States*, 134 S. Ct. 2077 (June 2, 2014) ("[I]t has long been settled, for example, that we presume federal statutes do not . . . preempt state law." (citations omitted)).

This same reasoning applies here. It is improper to ascribe a broad remedial purpose to the FCUA Extender Statute and then read into the statute any and all interpretations that might support that purpose. To the contrary, the provision may only be read to further its purported purpose to the extent actually set forth in the statutory text. This is particularly true given that the FCUA Extender Statute, like CERCLA, "leaves untouched" States' judgments regarding the "scope of liability." *CTS*, 134 S. Ct. at 2187-88 ("A statute of repose can be said to define the scope of the cause of action, and therefore the liability of the defendant."). Absent some textual

indication that Congress intended to displace statutes of repose – which is lacking here – there is no basis for reading that interpretation into the FCUA Extender Statute.

       **E.**    *CTS* **Requires Reconsideration of This Court's Decision Regarding the Illinois Six-Month Notice Rule**

*CTS* also compels reversal of this Court's decision that the FCUA Extender Statute preempts the Illinois "six-month notice" requirement.  For this independent reason, all claims brought by NCUA on behalf of Members United must be dismissed.  The ISL provides that "[n]otice of any election [to void a security under the ISL] shall be given by the purchaser within 6 months after the purchaser shall have knowledge that the sale of the securities to him or her is voidable . . . ."  815 Ill. Comp. Stat. Ann. 5/13(B).  The Court's January 22 Order correctly recognized that the ISL's six-month notice requirement is "more properly categorized as a 'condition precedent' than a 'statute of limitations,'" and that there accordingly is "no direct conflict" between the FCUA and the notice requirement.  January 22 Order at 25-26.  Under *CTS*, that should end the inquiry.

The Court nevertheless held that the FCUA implicitly preempts Illinois' six-month notice requirement through the doctrine of obstacle preemption, January 22 Order at 27-31, which applies where the proponent of preemption can satisfy the "heavy" burden of showing that "the repugnance or conflict [between state law and the federal statute] is so direct and positive that the two acts" are not merely in "tension" but "cannot be reconciled or consistently stand together." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 101-02 (2d Cir. 2013) (burden is particularly heavy where "state law involves the exercise of traditional power"). The Court found these requirements satisfied here, reasoning that "Congress has decided that the NCUA shall be given three years from [the conservatorship date] to decide what claims to pursue on behalf of the financially distressed credit union over which it has just been given control";

16

that both the notice requirement and the FCUA's extender provision are addressed to "the amount of time a claimant may use to investigate a claim and decide what course to pursue"; and that the notice requirement was therefore preempted "to the extent that Morgan Stanley is relying on the Illinois statute to shorten the period of time within which NCUA must act."  January 22 Order at 27-28.

The Court's analysis cannot stand in light of *CTS*.  In *CTS*, the plaintiff argued that – even if CERCLA did not expressly preempt state statutes of repose – it did so implicitly based on the doctrine of obstacle preemption, given CERCLA's purported general purpose of extending the time in which plaintiffs could bring suit, and because state statutes of repose supposedly undermined that purpose.  *See CTS*, 134 S. Ct. at 2188.  The Supreme Court explicitly rejected this argument, holding that the purported conflict did not approach the type of "unacceptable obstacle to the attainment" of the extender statute's purposes required to invoke obstacle preemption.  *Id.*  As explained by the Supreme Court, "the level of generality at which the statute's purpose is framed affects the judgment whether a specific reading will further or hinder that purpose," and too general of a purpose should not be ascribed to a federal statute for purposes of obstacle preemption.  *Id.*  In the case of CERCLA, although it could be said to have the general purpose of "help[ing] plaintiffs bring tort actions for harm caused by toxic contaminants," Congress' decision not to provide a "complete remedial framework" but to instead "indicate[] its awareness of the operation of state law in a field of federal interest" showed that it did not intend to help victims of toxic contamination at all costs.  *Id.* (quoting *Wyeth v. Levine*, 555 U.S. 555, 575 (2009)).  Under these circumstances, the Supreme Court held that the "case for federal pre-emption is *particularly weak*."  *Id.* (emphasis added) (quoting *Wyeth*, 555 U.S. at 575).

The same is true here.  Accepting for argument's sake that the FCUA Extender Statute's general purpose is to help NCUA bring claims on behalf of "the financially distressed credit union over which it has just been given control," January 22 Order at 28, does not mean that Congress intended to eliminate *every* potential state law restriction that NCUA might face in furthering that goal.  Under the reasoning of *CTS*, this is particularly true given that the FCUA, like CERCLA, does not provide NCUA with a "general cause of action" to pursue its claims,[7] let alone a "complete remedial framework," *CTS*, 134 S. Ct. at 2188.  Rather, it leaves "many areas of state law untouched," including "judgments about causes of action," "the scope of liability," "burdens of proof," "rules of evidence," and "other important rules governing civil actions."  *Id.* The FCUA Extender Statute itself addresses only two narrow issues:  the accrual date of a statute of limitations on a *state* cause of action, and the duration of the limitations period, in both cases allowing *state* law to apply if it results in a longer limitations period.  *See* 12 U.S.C. §§ 1787(b)(14).  Thus, as with CERCLA, "Congress has indicated awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them," making the "case for federal pre-emption . . . particularly weak."  *CTS*, 134 S. Ct. at 2188 (quoting *Wyeth*, 555 U.S. at 575).

Indeed, this case presents a clearer case than *CTS* because the purposes underlying a notice requirement do not share "considerable common ground" with those underlying a statute of limitations (as *CTS* observed with respect to statutes of limitations and statutes of repose, *id.* at 2182).  Rather, the ISL's notice requirement and the applicable statute of limitations bear little, if any, resemblance to each other.  A statute of limitations is a "time limit for suing in a civil case,"

---

[7] To the contrary, Congress granted NCUA only a carefully circumscribed action for fraudulent transfer that has no applicability here.  *See* 12 U.S.C. § 1787(b)(16).

*id.* (quoting *Black's Law Dictionary* 1546 (9th ed. 2009)), and is aimed at "promot[ing] justice by preventing surprises through [plaintiffs'] revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared," *id.* at 2183 (second alteration in original) (citation omitted).  By contrast, Illinois' notice rule is a time limit for providing notice of one's intent to rescind a transaction (not for filing suit), 815 Ill. Comp. Stat. Ann. 5/13(B), and its purpose is to prevent plaintiffs from treating voidable securities as option contracts, or otherwise gaining an unfair advantage or imposing an unfair detriment on a defendant, by sitting on known claims.[8]  Nothing in the FCUA's text, structure, or history suggests a desire to alter the state-law regime addressing these distinct concerns.

In short, the "case for federal pre-emption is particularly weak," *CTS*, 134 S. Ct. at 2188 (quoting *Wyeth*, 555 U.S. at 575), and NCUA has not satisfied its heavy burden of establishing that the ISL's notice provision and the FCUA are in such direct and irreconcilable conflict that the former poses "an unacceptable obstacle to the attainment of [the latter]'s purposes."  *Id*. NCUA's claims on behalf of Members United must be dismissed for this additional reason.

## II.    At a Minimum, the Court Should Certify the Question of the FCUA's Preemptive Effect in Light of *CTS* to the Second Circuit

In the alternative, the Court should, at a minimum, certify to the Second Circuit the question of whether, in light of *CTS*, the FCUA preempts state statutes of repose and notice requirements.  A district court may certify an interlocutory appeal where:  (1) the order to be

---

[8] *See Greenwood v. Fenn*, 26 N.E. 487, 490 (Ill. 1891) ("[I]f [the plaintiff] wished to avoid [the transaction], it was incumbent upon him to make his election so to do promptly after becoming aware of the fraud. His continuing to treat the [property] as his own, and especially his . . . availing himself of the uses and profits thereof, after becoming fully apprised of the fact, may be fairly held to establish an election on his part to affirm the transaction, and after having once made his election he must be held to it, and cannot be permitted afterwards to rescind."); *Buehl v. Dayson*, 469 N.E.2d 403, 409 (Ill. App. Ct. 1984) (notice requirement "prevent[s] purchasers, who have sufficient knowledge of the remedy available to them, from waiting the entire three year statute of limitations to decide whether to elect rescission").

appealed "involves a controlling question of law;" (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).[9]

Notably, this Court certified in the *FHFA* litigation the question of whether HERA preempts statutes of repose, finding each of the above three requirements satisfied.  *FHFA*, 858 F. Supp. 2d at 340-41.  The Court cited the "compelling arguments for certification" on the first and third prongs of the Section 1292(b) analysis, the "tension" between the Court's order denying the defendants' motion to dismiss and two other district court decisions, and the prospect that "an immediate appeal may expedite the conclusion of this litigation."  *Id.*  This case presents even stronger arguments for certification.

### A.    Whether the FCUA Preempts State Statutes of Repose and State Notice Requirements Is a Controlling Question of Law

A question of law is deemed controlling where "resolution of the issue on appeal could *materially affect* the outcome of litigation in the district court."  *LNC Invs., Inc. v. First Fid. Bank N.A.*, No. 92 Civ. 7584 (CSH), 2000 WL 461612, at *3 (S.D.N.Y. Apr. 18, 2000) (emphasis in original); *see also In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978).

Here, as in *FHFA*, there "can be no question" that a decision regarding whether statutes of repose and state notice requirements are preempted would "importantly affect the conduct" of this litigation.  858 F. Supp. 2d at 338.  A holding that the FCUA does not preempt state statutes of repose would result in dismissal of all of NCUA's claims, and a holding that the FCUA does

---

[9] Because "appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court," an "appellate court may address any issue fairly included within the certified order."  *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (emphasis in original). Thus, although this case presents two independently certifiable questions – whether the FCUA preempts statutes of repose and whether it preempts state notice requirements – this Court need only conclude that it presents one to certify all issues fairly included within its January 22 Order.

not preempt the Illinois six-month notice requirement would result in dismissal of the claims asserted on behalf of Members United.  *See* Part I *supra*.  Certification here thus follows *a fortiori* from *FHFA*, where the Court certified a similar preemption question that could "significantly narrow the scope" of discovery and trial, "saving the parties and the public time and money."  *FHFA*, 858 F. Supp. 2d at 338.

Certification is also particularly appropriate where, as here, the order involves "a purely legal question about which there are no triable issues of fact."  *In re Air Crash off Long Island, N.Y., on July 17, 1996*, 27 F. Supp. 2d 431, 435 (S.D.N.Y. 1998).  Indeed, this Court concluded in *FHFA* that "timeliness determinations, which go directly to the plaintiff's ability to maintain some or all of its claims, are precisely the type of legal issue that Congress intended to be addressed through the Section 1292(b) procedure."  *FHFA*, 858 F. Supp. 2d at 337.

Finally, a decision by the Second Circuit would have precedential value for – and a potentially outcome-determinative effect on – a significant number of complex and important RMBS cases, including nine other lawsuits by NCUA pending before this Court, the remaining FHFA matters also before this Court and the District of Connecticut, and several FDIC matters pending before Judge Stanton, as well as any other pending or future cases brought by any of these entities on behalf of institutions in conservatorship, receivership, or liquidation.[10]

## B.      There Is Substantial Ground for Difference of Opinion

There are also plainly, at a minimum, "substantial grounds for difference of opinion" regarding whether the FCUA preempts state statutes of repose and notice requirements.  *Id.* at 339.  In light of *CTS* and the Supreme Court's vacatur of the Tenth Circuit's *Nomura* decision,

---

[10] *See In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997) (stating a court may also look to whether "the certified issue has precedential value for a large number of cases").

there is at least as much doubt on this question as there was when this Court certified the issue of

HERA's preemption of statutes of repose to the Second Circuit. *See id.* at 339-41.

As discussed in Part I above, the Supreme Court's decision in *CTS* requires reversal of

this Court's and the Second Circuit's prior opinions holding that the extender statutes apply to

statutes of repose. But at a minimum, *CTS* and the Supreme Court's GVR of the Tenth Circuit's

*Nomura* decision establish substantial grounds for difference of opinion as to whether those other

cases were correctly decided. GVR is only appropriate where intervening developments "reveal

a reasonable probability that the decision below rests upon a premise that the lower court would

reject if given the opportunity for further consideration." *Wellons*, 558 U.S. at 225 (quoting

*Lawrence v. Chater*, 516 U.S. 163, 167 (1996)). The Supreme Court's order in *Nomura* thus

reflects its own considered judgment that *CTS* provides substantial ground to believe that *FHFA*

rests on an erroneous premise. *See Vazquez-Valentin v. Santiago-Diaz*, 459 F.3d 144, 148 (1st

Cir. 2006) ("[GVRs] tell us that we *misapprehended* the law when we entered the judgment now

vacated, and that we must reconsider the case now remanded to us in light of the Supreme

Court's opinion." (emphasis added)).

### C.       Immediate Appeal Will Materially Advance the Litigation

For the reasons already noted, immediate appeal would "materially advance the ultimate

termination of the litigation." *FHFA*, 858 F. Supp. 2d at 338. The issues for appeal could end

the litigation, or at a minimum significantly impact its scope, avoiding the potential for

tremendous inefficiency and wasted resources if resolution of these issues is delayed. As in

*FHFA*, appellate resolution of the timeliness of NCUA's claims will "remove a cloud of legal

uncertainty" hanging over these and similar actions. *See id.* This case is still in the early stage

of discovery, involving coordinated actions that will, as in *FHFA*, almost certainly result in the

production of millions of documents, depositions of dozens of individuals, and potentially

hundreds of millions of dollars in litigation costs.  The parties, third parties, and the courts are poised to spend vast amounts of time and money on this litigation, much or all of which would be to no purpose if the Second Circuit decides that the FCUA does not preempt state statutes of repose and/or notice requirements.  In such circumstances, interlocutory review "may be the best way to materially advance the ultimate termination of the litigation by avoiding protracted litigation and multiple appeals of the same or similar issues."  *Id.* at 338-39 (citation omitted).

### III.   The Court Should Stay All Proceedings Pending Interlocutory Appeal

A court may issue a stay of proceedings pending appeal based on its consideration of four factors:  (1) whether the movant has made a strong showing of likely success on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the action; and (4) where the public interest lies.  *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 640 (S.D.N.Y. 2012) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)).[11]  These factors are on a "sliding scale," where "more of one excuses less of the other."  *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006).

A stay request pending the Tenth Circuit's decision on remand from the Supreme Court is under review in the Kansas actions coordinated with this case, and indeed that court has once already stayed all proceedings in these matters pending the Tenth Circuit's resolution of interlocutory appeals in these actions.  *See* Order, *NCUA v. RBS Sec., Inc.*, No. 2:11-2340-JWL-JPO (D. Kan. Apr. 29, 2013), Dkt. No. 207 (the "Stay Order").  In light of the potential efficiency gains, and for the reasons discussed below and in the defendants' stay motion pending before Judge Lungstrum, a stay is again appropriate now.  *See* Mem. of Law in Support of Mot.

---

[11] While "stated in these terms, the test contemplates that a movant may be granted relief even if it demonstrates something less than a likelihood of success on the merits of its appeal."  *Sutherland*, 856 F. Supp. 2d at 640.

to Stay All Proceedings, No. 2:11-cv-2340-JWL-JPO (D. Kan. June 20, 2014), Dkt. No. 370.

Indeed, the basis for a stay is even stronger now, as the parties are beginning extensive and

expensive discovery, which may be rendered unnecessary by decisions on the preemption issue

from the Tenth and Second Circuits.

### A.     There Is a Strong Showing of Likelihood of Success on the Merits

A party makes a "strong showing" of likely success on the merits by demonstrating a

"substantial possibility" or a "reasonable probability" of success on the merits.  *See Mohammed*

*v. Reno*, 309 F.3d 95, 100, 101 (2d Cir. 2002).  That standard is easily satisfied here.  As

discussed in Parts I and II above, the Supreme Court's *CTS* decision at a minimum implicitly

overrules the Second Circuit's decision in *FHFA*, and, in any event, the Supreme Court itself has

already found that there is a "reasonable probability" that the FCUA does not preempt state

statutes of repose.  *See Nomura*, 2014 WL 2675836, at *1; *Wellons*, 558 U.S. at 225.

### B.     Morgan Stanley Will Suffer Irreparable Injury Absent a Stay

Irreparable injury "cannot be remedied" absent the stay.  *Grand River Enter. Six Nations,*

*Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (per curiam).  Here, all parties would bear

significant discovery and other costs were this Court to permit proceedings to continue during

the pendency of any interlocutory appeal, and no statute or rule permits the recoupment of such

costs based on the outcome of the appeal, resulting in irreparable injury.[12]  Indeed, the parties to

the NCUA actions are already in the process of collectively producing and reviewing *tens of*

*millions* of documents – a process the Court has ordered to be substantially completed by

October 31, 2014.  Such costs would prove unnecessary should Morgan Stanley prevail before

---

[12] *See Philip Morris USA, Inc. v. Scott*, 131 S. Ct. 1, 4 (2010) (Scalia, J., in chambers) ("Normally the mere payment of money is not considered irreparable . . . but that is because money can usually be recovered from the person to whom it is paid.  If expenditures cannot be recouped, the resulting loss may be irreparable.").

the Second Circuit.  Courts in this Circuit and elsewhere routinely grant stays under these or similar circumstances, as did Judge Lungstrum previously in the Kansas actions.[13]

### C.   NCUA and the Public Will Benefit from a Stay of Proceedings

NCUA and the public would not be harmed by a stay pending appeal.  First, "the only harm to [a plaintiff] from a stay is delay in achieving a final resolution of her claim, and that harm may be fully remedied by an award of pre-judgment interest."  *Sutherland*, 856 F. Supp. 2d at 643.  Moreover, as with the stay previously granted by Judge Lungstrum in the Kansas NCUA proceedings, which lasted only four months, the delay might not be particularly extensive to begin with.  Indeed, as mentioned, the Tenth Circuit requested expedited briefing from the parties even before receiving the Supreme Court's mandate.  The Second Circuit could expedite any appeal as well.  Accordingly, NCUA would not suffer any discernible prejudice from a stay, other than arguably a short delay in discovery, and, as Judge Lungstrum previously found, "interests of judicial economy and the time and expense that could be spared the parties depending on the outcome of the appeal" "significantly outweigh" that interest.  Stay Order at 4.  Indeed, NCUA and the public would benefit from a stay in the event that Morgan Stanley succeeds on interlocutory appeal, because it would avoid needless litigation costs.

### CONCLUSION

For the foregoing reasons, Morgan Stanley respectfully submits that this Court upon reconsideration should grant its motion to dismiss NCUA's complaint in its entirety, or in the alternative, certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and grant a stay of all proceedings pending that appeal.

---

[13] *See also, e.g.*, *Estate of Joseph Re v. Kornstein Veisz & Wexler*, No. 94 Civ. 2369 (S.D.N.Y. Sept. 23 and 24, 1997) (Sotomayor, J.), Dkt. Nos. 117 and 118 (staying all discovery pending resolution of interlocutory appeal because "it would be a waste of judicial and litigant time and resources to pursue discovery until the appellate process has concluded").

Dated:   New York, New York
         July 10, 2014

                                        By:   /s/ James P. Rouhandeh
                                              _____

                                              James P. Rouhandeh
                                              Paul S. Mishkin
                                              Daniel J. Schwartz
                                              Jane M. Morril
                                              Scott Wilcox

                                              DAVIS POLK & WARDWELL LLP
                                              450 Lexington Avenue
                                              New York, New York 10017
                                              Telephone:    (212) 450-4000
                                              Facsimile:    (212) 701-5800

                                              *Attorneys for Defendants Morgan Stanley*
                                              *& Co., Inc., n/k/a Morgan Stanley & Co.*
                                              *LLC, and Morgan Stanley Capital I Inc.*

## <u>APPENDIX 1: THE FCUA EXTENDER STATUTE</u>

(A) In general -- Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [NCUA] Board as conservator or liquidating agent shall be --

(i) in the case of any contract claim, the longer of --

(I) the 6-year period beginning on the date the claim accrues; or

(II) the period applicable under State law; and

(ii) in the case of any tort claim, the longer of --

(I) the 3-year period beginning on the date the claim accrues; or

(II) the period applicable under State law.

(B) Determination of the date on which a claim accrues -- For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of --

(i) the date of the appointment of the [NCUA] Board as conservator or liquidating agent; or

(ii) the date on which the cause of action accrues.

12 U.S.C. § 1787(b)(14).

## APPENDIX 2: THE CERCLA EXTENDER PROVISION

a) State statutes of limitations for hazardous substance cases

(1) Exception to State statutes

In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

(2) State law generally applicable

Except as provided in paragraph (1), the statute of limitations established under State law shall apply in all actions brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility.

. . .

(b) Definitions

. . .

(2) Applicable limitations period

The term "applicable limitations period" means the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) of this section may be brought.

(3) Commencement date

The term "commencement date" means the date specified in a statute of limitations as the beginning of the applicable limitations period.

(4) Federally required commencement date

(A) In general

Except as provided in subparagraph (B), the term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.

(B) Special rules

In the case of a minor or incompetent plaintiff, the term "federally required commencement date" means the later of the date referred to in subparagraph (A) or the following:

(i) In the case of a minor, the date on which the minor reaches the age of majority, as determined by State law, or has a legal representative appointed.

(ii) In the case of an incompetent individual, the date on which such individual becomes competent or has had a legal representative appointed.

42 U.S.C. § 9658.