KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3209
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

March 20, 2015

*Via ECF (S.D.N.Y. and C.D. Cal.) and Email (D. Kan.)*

The Honorable Denise L. Cote
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

The Honorable John W. Lungstrum
The Honorable James P. O'Hara
United States District Court for the District of Kansas
500 State Avenue, Suite 517
Kansas City, KS 66101

The Honorable George H. Wu
United States District Court for the Central District of California
312 North Spring Street
Los Angeles, CA 90012-4701

    Re:    *NCUA v. RBS Securities Inc.*, No. 13-6726 (S.D.N.Y.)
             *NCUA v. RBS Securities Inc.*, No. 11-5887 (C.D. Cal.)
             *NCUA v. RBS Securities Inc.,* No. 11-2649 (D. Kan.)
             *NCUA v. Morgan Stanley & Co.*, No. 13-6705 (S.D.N.Y.) (Lead Case for Filing)

Judges Cote, Lungstrum, Wu, and O'Hara
March 20, 2015
Page 2

Dear Judges Cote, Lungstrum, Wu, and O'Hara:

   The National Credit Union Administration Board, as liquidating agent ("NCUA"), respectfully opposes RBS's March 18, 2015 request to compel certain damages information. NCUA has provided RBS (and all Defendants) with all of the information sought by this motion.

  **1.** On October 9, 2014, Defendants served interrogatories on each liquidated credit union requesting information relating to damages. *See* Def'ts Mot., Exh. D (Interrogatories No. 6). Among other things, these Interrogatories requested: "the amount of any subsequent repayments of principal, missed or late payments, if any, the unpaid principal balance on each Certificate, the cumulative income received on each such Certificate, whether that Certificate was sold, the price of sale, the date of sale, the entity from which the sale was made, whether such sale was made through the National Credit Union Administration Board Guaranteed Notes Program ["NGN"], and whether any interest in the Certificate was retained or repurchased by NCUA or the Credit Unions (and if so, describe the interest retained or repurchased)." *Id.*

   NCUA's responses to these Interrogatories both cited to and attached documents reflecting the dates and amounts of all income and principal payments received on each security from the date of purchase until the present. They identified the three certificates that NCUA still held, and the 184 certificates that had been disposed of. NCUA further disclosed that 178 of these certificates[1] were disposed of in a series of NGN transactions, which were designed to mitigate the extraordinary losses suffered by the credit unions from their investments in the RMBS securities at issue. The responses cited the NGN offering and closing documents, which described all pertinent details of these transactions. Those documents explain, for instance, how RMBS certificates (both those involved in these coordinated actions as well as those not at issue in these cases (collectively the "Underlying Securities")) were conveyed by NCUA to a series of NGN trusts. The NGN trusts then issued NGN Notes, the coupon and principal payments of which were funded from the Underlying Securities and separately guaranteed by NCUA. NCUA also cited documents setting forth the aggregate amount of consideration received by NCUA in connection with the NGN transactions.

   Upon receiving NCUA's responses, Defendants requested that NCUA break out the aggregate consideration obtained from the NGN transactions on a security-by-security basis to each of the Underlying Securities. NCUA agreed to do so. *See* Exh. 1, at 5. In its supplemental responses, NCUA directed Defendants to a single document prepared by Defendant Barclays – the lead underwriter of the NGN notes – that reflects, on a security-by-security basis, the amount of the aggregate consideration *allocated to each of the Underlying Securities* ("Barclays document"). *See* Def'ts Mot., Exh. A, at 27-29, 41-43, 59-61, 80-82. Specifically, the Barclays Document is an excel spreadsheet produced in native form. One tab of that spreadsheet lists each of the Underlying Securities that were conveyed as part of the NGN transactions, and further lists the amount of consideration received by NCUA with respect to each such security. NCUA's supplemental interrogatory responses thus provided detailed information for each of the 178 certificates at issue in this case that were disposed of in the NGN Program.

---

[1] The remaining six certificates were disposed of outside of the NGN. NCUA's interrogatory responses disclosed the date and price of these dispositions.

Judges Cote, Lungstrum, Wu, and O'Hara
March 20, 2015
Page 3

    **2.** As the foregoing demonstrates, RBS's claim that "NCUA has refused to provide the sale price, consideration, or value received in these conveyances" is demonstrably untrue. NCUA's initial interrogatory responses provided this information on an aggregate basis. At Defendants' request, NCUA supplemented its responses to also provide this information specified for each certificate. NCUA then provided additional written confirmation on two separate occasions. On March 6, 2015, and in response to further requests by RBS, NCUA informed RBS that the Barclays document "shows the amount that the NCUA as liquidating agent received in the NGN transactions *on account of each of the Underlying Securities*." *See* Exh. 2, at 2 (emphasis added). On March 17, 2015, NCUA again informed RBS that "the documents we've cited pursuant to Fed. R. Civ. P. 33(d) provide the information sought by Defendants' interrogatories." *Id.* at 1. Nor is it possible that RBS (which writes "on behalf of Defendants") cannot fairly interpret this document: it was created by Defendant Barclays, which is certainly familiar with it. Thus, even aside from NCUA's confirmations that the Barclays document contains all of the information sought by this motion on a security-by-security basis, Defendants must have had independent knowledge of this fact.[2]

    **3.** RBS also complains that NCUA has refused to answer follow-up questions regarding the Barclays document. Just the opposite is true. On the day before RBS filed this motion, NCUA told RBS that "we would be interested in working cooperatively with Defendants to identify and discuss relevant fields in the cited documents for both NCUA's and Defendants' interrogatory responses." *See* Exh. 2, at 1. NCUA has made clear that it welcomes an informal discovery procedure whereby the parties will discuss and identify responsive information in the documents cited under Rule 33(d), but believes that such cooperation should be a two-way street. RBS did not respond to this request, nor submit a proposal of its own. Rather, it chose to file the instant motion the next day, without any prior notice.[3] *See* Dkt. No. 198, at 4 (No. 13-6705) (denying RBS's motion to compel for failure to complete "the meet-and-confer regarding NCUA's proposal"). Because Defendants submit that NCUA should be *compelled* to identify and explain its documents to them, presumably Defendants accept that obligation for themselves, which is precisely what NCUA has proposed.

*  *  *

    NCUA has provided all of the information sought by Defendants' motion and affirmed that fact on at least two occasions.[4] Defendants' motion should be denied.

---

[2] RBS's claim that it cannot "mediate productively" without "fundamental damages information" from NCUA has no merit. Pursuant to Federal Rule of Evidence 408, NCUA has provided (or will provide upon request) all Defendants with whom the agency has mediated spreadsheets containing detailed damages calculations on a security-by-security basis for the express purpose of mediation and, hopefully, settlement.

[3] Given that Barclays prepared the document that Defendants purport not to understand, it is particularly inexplicable that all Defendants (including apparently Barclays) chose not to discuss NCUA's proposal, but to file this motion to compel instead.

[4] Although RBS cites document requests in its letter, there can be no suggestion that NCUA has failed to produce responsive damages-related documents. No Defendant has sought to meet and confer with NCUA about any alleged deficiency concerning such documents, nor is NCUA aware of any. *See also* Dkt. No. 224 (No. 13-6705) (listing requirements for seeking targeted production of documents).

Judges Cote, Lungstrum, Wu, and O'Hara
March 20, 2015
Page 4


Respectfully submitted,

/s/  David C. Frederick

| | |
|---|---|
| David C. Frederick | Stephen M. Tillery |
| Wan J. Kim | Greg G. Gutzler |
| Gregory G. Rapawy | Robert L. King |
| Andrew C. Shen | KOREIN TILLERY LLC |
| Daniel V. Dorris | 505 North Seventh Street, Suite 3600 |
| KELLOGG, HUBER, HANSEN, TODD, | St. Louis, MO 63101 |
|    EVANS & FIGEL, P.L.L.C. | Tel:  (314) 241-4844 |
| Sumner Square | Fax:  (314) 241-3525 |
| 1615 M Street, N.W., Suite 400 | stillery@koreintillery.com |
| Washington, D.C. 20036 | ggutzler@koreintillery.com |
| Tel:  (202) 326-7900 | rking@koreintillery.com |
| Fax:  (202) 326-7999 | |
| dfrederick@khhte.com | David H. Wollmuth |
| wkim@khhte.com | Frederick R. Kessler |
| grapawy@khhte.com | Steven S. Fitzgerald |
| ashen@khhte.com | Ryan A. Kane |
| ddorris@khhte.com | WOLLMUTH MAHER & DEUTSCH LLP |
| | 500 Fifth Avenue, 12th Floor |
| George A. Zelcs | New York, NY 10110 |
| KOREIN TILLERY LLC | Tel:  (212) 382-3300 |
| 205 North Michigan Avenue, Suite 1950 | Fax:  (212) 382-0050 |
| Chicago, IL 60601 | dwollmuth@wmd-law.com |
| Tel:  (312) 641-9750 | fkessler@wmd-law.com |
| Fax:  (312) 641-9751 | sfitzgerald@wmd-law.com |
| gzelcs@koreintillery.com | rkane@wmd-law.com |
| | |
| | Norman E. Siegel (D. Kan. # 70354) |
| | Rachel E. Schwartz (Kan. # 21782) |
| | STUEVE SIEGEL HANSON LLP |
| | 460 Nichols Road, Suite 200 |
| | Kansas City, MO 64112 |
| | Tel:  (816) 714-7100 |
| | Fax:  (816) 714-7101 |
| | siegel@stuevesiegel.com |
| | schwartz@stuevesiegel.com |

*Attorneys for Plaintiff National Credit Union Administration Board*

cc:     Counsel of Record (via ECF or Email)